# Steele *v.* May, Buttrey & Cooney.

*Action to recover Damages for Injuries done to Stock of Goods by Water.*

1. *Evidence; when error in admission of evidence without injury.* The admission of irrelevant and incompetent evidence is error without injury, when the remaining evidence in the case is without conflict, and justifies the giving of the general affirmative charge for the party in whose favor the judgment was rendered, and is sufficient to support such judgment.

2. *Master and servant; when master liable for acts of servant.*

[Steele v. May, Buttrey & Cooney.]

The master is liable in damages for the act of his servant or employe, when the act which results in the injury complained of is done while the servant is acting within th' scope of his employment in the master's service, and was such as may be fairly said to have been authorized expressly or impliedly by the master. or was such as was incident to the performance of the duties entrusted to him by the master.

3. *Same; same; case at bar.*—In an action to recover damages for injury to plaintiff's stock of goods, which was caused by reason of the overflow of a bath tub in the bath room of a hotel, which was just above plaintiff's stock, it was shown that in response to a bell being rung by a guest of the hotel, the bell boy answered and was directed to prepare the tub for a ba'h for a guest; that he opened the faucets of the bath tub and found there was not a sufficient supply of towels in the ba'h room; that he left to get more towels; that he was delayed in his return and staid away until the tub had filled with water and overflowed, causing the damage to plaintiffs' stock of goods, for which they sue. *Held*: That the overflow was caused by the negligence of the servant while acting within the scope of his employment, and that, therefore, the master was liable.

APPEAL from the Circuit Court of Madison.

Tried before the Hon. OSCEOLA KYLE.

This suit was brought by the appellees, May, Buttrey & Cooney, against the appellant, Walter R. Steele, to recover damages for injury to plaintiffs' stock of merchandise, caused by the overflow of a bath tub in the bath room adjoining and forming a part of room No. 5 in the Huntsville Hotel, of which the defendant was the proprietor and operator at the time of the injury complained of. The facts of the case necessary to an understanding of the decision on the present appeal, are sufficiently stated in the opinion.

Upon the introduction of all the evidence, the court, at the request of the plaintiffs, gave to the jury the following written charge: "If the jury believe the evidence, they will find for the plaintiffs; and the amount of their recovery will be two hundred and ten dollars, with interest at eight per cent. from the 25th day of

[Steele v. May, Buttrey & Cooney.]

March, 1900, to the date of trial." To the giving of this charge the defendant duly excepted.

There were verdict and judgment for the plaintiffs. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

HUMES, SHEFFEY & SPEAKE, for appellant, cited 11 Amer. & Eng. Ency. of Law, 32; 2 Amer, & Eng. Ency. of Law, 752, § 22; 1 Fetter's Carrier of Passengers, 98.

COOPER & FOSTER, *contra.*—The general charge was properly given for the appellees. The evidence was without conflict and showed that their goods were damaged by the overflow of a bath tub on appellant's premises, and that the water was left running by a servant of appellant, acting within the scope of his employ. This rendered appellant liable to appellees to the amount of the damages sustained.—20 Amer. & Eng. Ency. of Law (2d ed.), 164; *Killon v. Power*, 91 Am. Dec. 127; *Marshall v. Cohen*, 9 Am. Rep. 170; *Simonton v. Loring*, 28 Am. Rep. 29.

HARALSON, J.—In each count, the 1st and 3d, on which the case was tried, it is averred that the injury complained of to plaintiffs' stock of goods, was caused by reason of the negligence of the defendant, or his servants or employes, in allowing the faucets which supplied the bath tub (in the hotel above plaintiffs' store), to be and remain open, so that the tub became full and ran over, thus damaging the plaintiffs in the sum claimed.

The defendant's contention, as stated by his counsel is, that the injury sustained on account of the overflow of the tub, and the seiping of the water through the floor into plaintiffs' storeroom below, injuring their goods, was occasioned by the fault of one Lowery—who was a guest in the hotel, and who had gone into this bathroom to take a bath—in not watching the flow of water into the bath-tub, while the bell boy of the hotel, who came to prepare the bath for him, and who had opened

the faucets, had gone out of the bath-room to get towels for bath, and that Lowery and Harris—the latter occupying, as a guest, room No. 5, to which the bath-room was attached, and who consented for Lowery to take a bath in said room—were liable for the negligence of the former in not closing the faucets, in the absence of the bell boy.

The contention of the plaintiffs is, that the injury was caused by the negligent act of the bell boy, Barnett, who, as the proof shows, was in the employment and service of the defendant in his hotel as a bell boy, whose duty it was to answer the calls of the bells of the numerous rooms occupied as chambers by guests, including those apartments or rooms where the bath arrangements were connected, as well as the rooms occupied by guests where no bath was attached.

The evidence showed without conflict that the damage to the goods was $210; that Harris, as a guest of the hotel, had been assigned to and occupied this room, paying an additional sum for it, because it had a bath-room connected with it. It was customary, and not against the rules of the hotel, for other guests, with the consent of parties who occupied rooms with baths, to repair to such rooms for bathing purposes, instead of to the common bath room, for the use of all guests, and no extra charge was made in such cases. Lowery was a guest, boarding in the hotel. With Harris' consent, he went into the latter's room. The bell communicating with the office of the hotel was rung, and in response a bell boy, in the employment of defendant, was sent to the room. He was informed of what was desired, and prepared the tub for Lowery for his bath, and opened both the cold and warm water faucets, so as to discharge water for the bath, into the tub. It appears, there was not a sufficient supply of towels on hand, and he left to get others. He was delayed in his return, and stayed away until the tub had filled with water and overflowed, causing the damage to plaintiffs for which they sue. Harris was in bed at the time, in room 5, and Lowery was not in the bath room, but was also in room 5.

[Steele v. May, Buttrey & Cooney.]

1. The deposition of R. B. Jones, the former associate of defendant in keeping the hotel, and who had retired from the business, leaving the premises and their conduct under the lease in charge of defendant, was taken as a witness for the plaintiffs.

The 14th direct interrogatory to him was: "What was the nature of your contract with your lessees [lessors] as to repairs?" The answer was: "The nature of our contract for the last three years we were in charge of the house was, that we were allowed $50 per month out of the rent for repairs," etc. The defendant objected to the interrogatory and answer, and moved to exclude them; because irrelevant and immaterial to any issue involved in the case. The bill of exceptions states, that "no objection had been made by defendant, to direct interrogatory 14, at the time of filing cross-interrogatories, nor until the trial of the cause had been entered upon," and "the court overruled the objection because it came too late," and refused to exclude the evidence. If this was error, it was error without injury. Whether in or out was of no apparent consequence. The remaining evidence is without conflict, and justified the giving of the general charge for the plaintiffs, and no possible adverse inference to defendant could have been drawn from the admission of this evidence.—*First Nat. Bank of Talladega v. Chaffin,* 118 Ala. 246, 259.

2. There was no error in the rulings of the court on the other assignments of error predicated on the exclusion of evidence.

The sole question for review in the case is, whether the hotel proprietor is responsible for the alleged negligence of the bell boy, Wm. Barnett, in not cutting off the water running into the bath tub, before it overflowed.

The general rule as to the liability of the master for the act of his servant, as gathered from the authorities is, that "the master is liable for all injuries to person or property caused by the negligence of the servant, if the act, which results in the injury, is done while the servant is acting within the scope of his employment in the master's service; though the act was not necessary

to the performance of the servant's duties, or was not expressly authorized by the master or known to him."—20 Am. & Eng. Ency. Law (2d ed.), 163. The meaning of the words, "while acting in the scope of his employment," or "acting within the range of the authority of the servant," and such like expressions, as applied to the acts of the servant in determining the master's liability therefor, has been much discussed, and is well understood. Mr. Wood, in his work on Master and Servant, states the question as usually presented to be: "Whether as a matter of fact, or of law, the injury was received under such circumstances that, under the employment, the master can be said to have *authorized* the act?  *  * The test of liability in all cases depends upon the question whether the injury was committed by the authority of the master expressly conferred, or fairly inferred from the nature of the employment and the duties incident to it, and the declarations of the servant are not sufficient to establish such authority."—§ 279. Again: "The master assumes the risk of an improper discharge of duties by the servant. Indeed, he takes the risk of all consequences of a wrongful execution of his duties, on the part of any person whom he employs in whatever capacity. By such employment he sets in motion that which produces the injury."—§ 282. Still again, the same author adds: "A master cannot screen himself from liability for an injury committed by his servant, within the line of his employment, by setting up private instructions or orders given by him, and their violation by the servant. By putting the servant in his place, he becomes responsible for all acts within the line of his employment, although they are willful and directly antagonistical to his orders. The simple test is, whether they were acts *within the scope of* his employment; not whether they were done while prosecuting the master's business; *but whether they were done by the servant in furtherance thereof, and were such as may be fairly said to have been authorized by him.* By *authorized* is not meant authority expressly conferred, but whether the act was such as was incident to the

performance of the duties intrusted to him by the master, even though in opposition to his express and positive orders. * * * The master can never escape liability for an *abuse* of authority by the servant; therefore, the question always is, whether there was any authority express or implied on the part of the servant to do the act."—§ 307. To the same effect are our own adjudications.—*Goodloe v. M. & C. R. Co.,* 107 Ala. 233, and authorities there cited; *Lampkin v. L. & N. R. R. Co.,* 106 Ala. 287.

We have no difficulty in holding in this case, that the servant, sent by the master in response to the call of the guest, in preparing the bath for the latter, acted in the line of his employment, if not under express, at least under implied authority from his master, the defendant. That the overflow was caused by the negligence of the servant is shown without conflict in evidence. The liability of the defendant for the injury seems necessarily to follow. In *Simonton v. Loring,* 68 Mo. 164, s. c. 28 Am. Rep. 29, it was held where the servant of the occupants of the upper tenement accidentally left open a faucet thereby causing the water to overflow and flood the tenement below, that the occupants of the upper tenement were liable for the damage thereby done. To the same effect is *Killion v. Power,* 51 Penn. St. 429, s. c. 91 Am. Dec. 127, and *Marshall v. Cohen,* 44 Ga. 489, s. c. 9 Am. Rep. 170.

It may be that as between Lowery and defendant, the former was guilty of negligence, for which he might be accountable to some one—a question we do not now decide—but as between the plaintiffs and defendant, the latter cannot escape liability, because Lowery owed a duty to him to turn off the water, which he neglected. Even if it was understood between the guests and defendant, as defendant proposed to show, that it was the duty of the latter to look after the flow of the water, when they came to use the bath-tubs for bathing purposes, that fact could in nowise affect the plaintiffs, not a party to the understanding and having no knowledge of it. As to them, it was the duty of defendant to see that the guests discharged their obligation to him.

Affirmed.