## NEW MORGAN COUNTY BUILDING & LOAN ASS'N v. PLEMMONS.
### (8 Div. 495.)

(Supreme Court of Alabama.   Nov. 8, 1923.)

**1. Trial ⬅⬆142—Refusal of affirmative charge held proper, where inferences unfavorable to requesting party may be drawn.**

The affirmative charge is properly refused, when there are inferences that may be drawn from the evidence unfavorable to the party requesting it.

**2. Trial ⬅⬆178—Evidence offered by party against whom general charge is asked accepted as true.**

In determining the propriety of giving the general charge, the evidence offered by the party against whom it is given must be taken as true.

**3. Principal and agent ⬅⬆20(2)—Evidence of agent's acts in trying to collect rent held admissible to show agency in action for injuries therefrom.**

In an action by the wife of a tenant for trespass and personal injuries, caused by defendant's agent in seeking to collect overdue rent, evidence of an attachment proceeding to collect the same rent, and the agent's activities, in connection therewith, and his threats to seize the furniture, put plaintiff and her children out in the street, and arrest her husband, if he objected, was competent to show his agency for defendant.

**4. Principal and agent ⬅⬆194(2)—Instruction limiting liability to acts of agent, abusing tenant's wife while attempting to collect rent, to acts expressly authorized, properly refused.**

In an action by the wife of a tenant for trespass and personal injuries, caused by abusive words and activities of defendant's agent in seeking to collect overdue rent, an instruction limiting defendant's liability to "acts within the scope or purview of authority conferred by defendant" was misleading, since implied authority was sufficient to hold the principal.

**5. Trial ⬅⬆253(9), 260(8)—Instructions ignoring evidence and containing matters covered by oral charge held properly refused.**

Instructions which were covered by the oral charge, and which ignored certain phases of the evidence, in an action for abusive remarks and conduct while attempting to collect rent, *held* properly refused.

**6. Trespass ⬅⬆13—Agent to collect rent must leave when requested.**

The agent of a landlord, sent to collect overdue rent, should have left the premises immediately after the tenant's wife notified or requested him to do so; he having made known his mission and failed to collect.

**7. Trial ⬅⬆140(1)—Credibility of witness making contradictory statements must be left to jury.**

Although a witness may use contradictory expressions on direct and cross-examination, the affirmative charge may not be given, as his credibility is for the jury.

**8. New trial ⬅⬆143(5)—Impeachment of verdict by evidence of what juror thought held improper.**

Evidence of what a juror thought, or why he agreed to a verdict, may not be received to impeach the finding.

**9. New trial ⬅⬆143(5)—Questions put to juror to impeach quotient verdict held proper.**

In examining jurors, to determine whether a quotient verdict had been rendered, questions as to whether the jury agreed in advance to find a verdict for whatever amount resulted from dividing the sum of 12 amounts by 12, and whether they afterwards agreed thereon, were proper.

**10. New trial ⬅⬆52—Quotient verdict required grant.**

Proof of a quotient verdict required a new trial.

Appeal from Circuit Court, Morgan County; O. Kyle, Judge.

Action by Lillian M. Plemmons against the New Morgan County Building & Loan Association. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

The complaint charges, in substance, that plaintiff, with her family, occupied a certain described dwelling house in Decatur, Ala., under a rental contract with defendant, for whom T. M. Dix was the rental agent; that Dix, while acting as such agent, and in the line and scope of his authority, came to said premises, and, after being informed by plaintiff that her husband was down town, "proceeded to abuse and make disparaging remarks about plaintiff's husband, and to make threats that he, as agent, or that his principal, * * * would haul off plaintiff's furniture and household goods and provisions, and sell and dispose of the same, and would arrest plaintiff's husband, and would eject plaintiff and her family from said building, and leave them without any household goods, wearing apparel, or anything to eat; * * * that when said T. M. Dix first began to inquire about plaintiff's husband, plaintiff informed him that she was not well; that she did not feel able to talk to him, and asked him to leave the premises"; that, although Dix "was so advised and requested to leave, he continued to remain in said house without legal cause or good excuse therefor," and persisted in interrogating plaintiff about various articles of furniture, and in making threats that he or his principal would take said goods, throw plaintiff in the streets, arrest her husband, etc. And it is alleged that, because of this conduct of Dix, acting as such agent, plaintiff was thrown into a nervous state, from which she suffered the illness and injury alleged. These requests for instruction were refused to defendant:

---

*⬅⬆For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes*

L. The jury cannot find a verdict compensating plaintiff for any pain and suffering not shown to your reasonable satisfaction to have been caused (and proximately caused) by acts within the scope or purview of authority conferred by defendant Building & Loan Association on Mr. Dix, and as the natural and ordinary result of such acts.

17. If Mr. Dix went as agent to see about collecting the rent, and if he remained more than a reasonable time for the accomplishment of such purposes after he failed to accomplish them, and if he failed to leave on being requested to do so, the New Morgan County Building & Loan Association is not liable for his so remaining.

P. There can be no damages assessed because of the taking of any inventory.

3. If the jury believe the evidence, Mr. Dix had the right to call Mrs. Plemmons' attention to the fact that the rent was due.

15. The court charges the jury that Mr. Dix had the right to go upon the rented premises to see about the collection of rent that may have been in arrears, and he had the right to make known his mission and his purpose, and he had the right to remain upon the rented premises a reasonable time for the purpose of such communication, and he was not bound to leave before the expiration of such reasonable time merely because Mrs. Plemmons may have demanded that he leave.

16. The court charges the jury that a person has a right to go upon rented premises for a lawful purpose, and he is not rendered a trespasser or wrongdoer for failure to immediately leave upon notice or demand before the expiration of a reasonable time for him to transact the business for which he may have rightfully entered, or to have given the notice or made the demand for which he may have rightfully entered.

The appeal in this case was submitted under rule 46. Supreme Court Practice (178 Ala. xix, 65 South. vii).

E. W. Godbey, of Decatur, for appellant.

The mere fact that Dix collected for the owner created no agency. K. & T. Coal Co. v. Millett, 50 Mo. App. 382. The principal, if so, was not liable, if Dix tarried after being requested to leave, nor for his remarks subsequent to finding out the tenant was not present. Hardeman v. Williams, 150 Ala. 415, 43 South. 726, 10 L. R. A. (N. S.) 653; A. G. S. v. Pouncey, 7 Ala. App. 548, 61 South. 601; Firemen's Fund Ins. Co. v. Schreiber, 150 Wis. 42, 135 N. W. 507, 45 L. R. A. (N. S.) 314, Ann. Cas. 1913E, 823; Repub. I. & S. Co. v. Self, 192 Ala. 403, 68 South. 328, L. R. A. 1915F, 516; Cox-Brainard Co. v. Keahey, 36 Ala. 340, 76 Am. Dec. 325; Singer Mfg. Co. v. Taylor, 150 Ala. 574, 43 South. 210, 9 L. R. A. (N. S.) 929, 124 Am. St. Rep. 90; L. & N. v. Bartee, 204 Ala. 539, 86 South. 394, 12 A. L. R. 251; Wise v. Curl, 177 Ala. 324, 58 South. 286; Callahan v. Gegan, 59 Ill. App. 347. Defendant's motion for a new trial should have been granted.

Sample & Kilpatrick, of Hartselle, for appellee.

Any act of the agent, which was intended to accomplish the purpose of his agency, was the act of the principal, for which the principal is liable. Empire Col. Co. v. Hammonds, 17 Ala. App. 60, 81 South. 838; Jebeles Co. v. Booze, 181 Ala. 456, 62 South. 12; Ala. F. & I. Co. v. Balodoni, 15 Ala. App. 316, 73 South. 205.

THOMAS, J. The suit is by a wife to recover damages for trespass and punitive damages for injury to her person. In Engle v. Simmons, 148 Ala. 92, 41 South. 1023, 7 L. R. A. (N. S.) 96, 121 Am. St. Rep. 59, 12 Ann. Cas. 740, it was declared that, irrespective of the ownership of the house, the wife must sue for personal injuries to her inflicted without physical violence by one entering the house occupied by herself and husband. Parker v. Newman, 200 Ala. 103, 107, 75 South. 479. In Republic Iron & Steel Co. v. Self, 192 Ala. 403, 406, 407, 408, 68 South. 328, 329 (L. R. A. 1915F, 516), the court said:

"But if his business is done, or is taking care of itself, and his servant, not being engaged in it, nor concerned about it, but impelled by motives that are wholly personal to himself, and *simply to gratify his own feeling of resentment*, whether provoked or unprovoked, commits an assault upon another, when such an act has and can have no tendency to promote any purpose in which the principal is interested, and to promote which the servant was employed, then the wrong is the purely personal wrong of the servant, for which he alone is responsible. * * * The question again came before the court in Hardeman v. Williams, 169 Ala. 50, 53 South. 794, where under an amended complaint it was held, under the facts of the former appeal, that a question for the decision of the jury was presented. Mr. Justice Sayre said: 'The principal is responsible for the acts of his agent done within the scope of his employment, and in the accomplishment of objects *within the line of his duties*, though the agent seek to accomplish the master's business by improper or unlawful means, or in a way not authorized by the master, unknown to him, or even contrary to his express direction.' * * * In the case before us the evidence shows that the offensive words were used by Mr. Wall, not as appellant's agent, in the doing of an act of the agency, nor as incidental to the carrying on of his master's business, but simply as the result of his own feeling of resentment at appellee's remark about his individual character. * * *"

In the instant case there was more than mere offensive words (L. & N. v. Bartee, 204 Ala. 539, 86 South. 394, 12 A. L. R. 251; Republic Iron & Steel Co. v. Self, supra); there was the continuing act, the presence against the will of plaintiff in her home and the offense to her therein by act as well as words. In New Morgan County Building & Loan Association v. Plemmons (Ala. Sup.) 97 South. 46,[1] the affidavit, claim bond, order quashing

[1] Ante, p. 16.

same on motion of said loan association, and its indemnifying bond given the sheriff, were held competent as tending to show that defendant knew Mrs. Plemmons claimed the property, and that it induced the sheriff to levy the writ of attachment. Though this action was after the time of the alleged trespass on the part of Dix, it had a tendency to show in what capacity the latter acted on the occasion of the alleged trespass—whether in his individual capacity, or as defendant's agent, or that of the original landlord. Tenn. Valley Bank v. Valley View Farm et al. (Ala. Sup.) 97 South. 62; [2] that is to say, the foregoing was competent evidence, when taken in connection with the testimony of plaintiff's husband, who said:

"I rented it from T. M. Dix. He was the agent for the defendant, the Building & Loan Association. I rented it from the Building Association through T. M. Dix, as agent. I paid the rent to T. M. Dix, or at his office. He said he was collecting these rents as the agent for the Building & Loan. I remember the day he was at our house, and the time, and my wife's condition afterwards. After that time Dix and I had a little talk about the payment of the rent. That was after this trouble occurred, when we had a little talk about it. There was an attachment issued later to collect this rent. I know of no part that Mr. Dix took in the attachment proceeding, other than he was helping to run the attachment and helping to work it up."

[1-3] The affirmative charge is properly refused, when there are inferences that may be drawn from the evidence unfavorable to the party to the suit requesting such charge, and in determining the propriety of the general charge the evidence against whom it is given must be taken as true. McMillan v. Aiken, 205 Ala. 35, 40, 88 South. 135. The attachment proceeding to collect the same rent that was due, and which Dix was trying to collect at plaintiff's house on the occasion in question, together with plaintiff's testimony that he said the rent was due the New Morgan County Building & Loan Association; that "he would have to take the furniture, after he asked what furniture I had; * * * would have me put out in the street with my children, and if my husband objected he would have him arrested; * * * he would levy on the furniture and everything we had, and leave me without a place to stay"—was competent evidence. There was no error in admitting evidence of the activities of Dix in and about the issue and levy of the attachment on the property of plaintiff and her husband for the collection of the rent. The testimony was limited to the question of agency. Jebeles, etc., Co. v. Booze, 181 Ala. 456, 62 South. 12.

[4] There was no error in refusing defendant's charge L. It was misleading in the use of the words "by acts within the scope or purview of *authority conferred* by defend-

ant." (Italics supplied.) It was not required that Dix had been given express authority to act *as he did* in and about the collection of the rent for defendant; it being sufficient that he was acting for it with authority, express or implied, for the collection of rents due defendant, and while so doing acted as and said what he did. Moreover, the matter was sufficiently covered in the general charge of the court.

[5] Charges 17 and P. requested by defendant, ignored a tendency of the evidence that Dix, under the circumstances indicated, made the threats or did the objectionable acts after he was requested or ordered to leave plaintiff's home, and the effect of such language or acts, done and said, under the circumstances, on plaintiff to her alleged injury.

Defendant's refused charge 3 sought to ignore the phase of the evidence that the acts and words of Dix were done and spoken in a rude, insulting, and rough manner; thus was the refusal justified. Moreover, the jury were properly instructed in the oral and in a given charge.

Charge 5, refused to defendant, is not to the effect stated in brief of counsel. The reference, no doubt, was to charge 4 (being duplication of assignments of error), and will be so considered. It was fairly covered by given charge 13 and by the oral charge.

[6] Charges 15 and 16, refused to plaintiff, misplaced the burden of proof as to the duty of Dix to immediately leave the premises after notice and after having made known his mission, and having failed in his mission to collect the rent. He should, thereupon, have departed immediately, as the jury were instructed it was his duty to have done.

[7] Although a witness may use contradictory expressions in testifying—on direct and cross-examination—the affirmative charge may not be given, for the credibility of the witness is for the jury. Jones v. Bell, 201 Ala. 336, 77 South. 998.

[8] After a careful examination of the evidence bearing on the ground of the motion—that the result was a quotient verdict—we are of opinion that it is well founded. Southern Ry. Co. v. Williams, 113 Ala. 620, 21 South. 328. The rule is that evidence of what a juror thought or why he agreed to a verdict may not be received to impeach the finding; such evidence has been admitted to sustain the action of the jury in returning such verdict. Leith v. State, 206 Ala. 439, 90 South. 687; Ala. City, G. & A. Ry. Co. v. Lee, 200 Ala. 550, 76 South. 908; B. R., L. & P. Co. v. Clemons, 142 Ala. 160, 37 South. 925.

[9] It was competent, against defendant's due objections and exceptions, to examine the witness Eaves as follows:

"Q. Mr. Eaves, was there any agreement, before you put down those figures and divided them by 12, that the jury would return a ver-

---

[2]Ante, p. 123.

dict for the amount that was shown by the division? A. There was not.

"Q. After these 12 amounts were put down and divided by 12, did the jury all agree on the verdict that was rendered? A. Yes, sir."

The questions were not specific in showing that individual jurors did not agree that they would respectively vote for a verdict in amount indicated by the quotient in evidence and returned into court with their verdict; that is, the questions merely show what the the jury agreed as a body it would do, and the evidence convinces us that the individual jurors agreed in advance to abide by the result. B. R., L. & P. Co. v. Moore, 148 Ala. 115, 130, 42 South. 1024; Ala. City, G. & A. Ry. Co. v. Lee, 200 Ala. 550, 553, 76 South. 908.

[10] The motion for a new trial should have been granted on the ground that a quotient verdict was returned. The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and BOULDIN, JJ., concur.