(123 So. 12)

## ST. LOUIS–SAN FRANCISCO RY. CO. v. ROBBINS. (6 Div. 313.)

Supreme Court of Alabama. June 6, 1929.

Rehearing Denied June 27, 1929.

Cabaniss, Johnston, Cocke & Cabaniss, of Birmingham, for appellant.

Ewing, Trawick & Clark, of Birmingham, for appellee.

THOMAS, J. The suit for personal injury was against the master and its servant acting for it at the time of the injury. The verdict and judgment were such as there was no ap-

plication of the rule of Walker v. St. Louis-San Francisco Ry. Co., 214 Ala. 492, 108 So. 388, as the judgment was against the agent and principal, and the railroad company is the sole appellant, on a summons and severance as to the other defendant, Benton.

It is conceded that whether Benton was negligent in the operation of the car was for the jury, but appellant contends that upon the undisputed evidence it is, as a matter of law, not liable for the act of Benton. The position of appellant is thus stated: The master of a boy employed to deliver messages and to perform errands with the use of a bicycle is not liable under the doctrine of respondeat superior for the unauthorized and unnecessary act of the boy, who, of his own volition and for his own purpose, hires an automobile without the knowledge or consent of the employer, and negligently operates it to the injury of a third person. Wells v. Henderson Land Co., 200 Ala. 262, 76 So. 28, L. R. A. 1918A, 115; Palos Coal & Coke Co. v. Benson, 145 Ala. 664, 39 So. 727; Alabama Power Co. v. Watts, 218 Ala. 78, 117 So. 425; 18 R. C. L. p. 7923, §§ 248–252; 6 Labatt (2d Ed.) § 2276.

 The test of liability in such a case is whether the act was one within the scope of the employment, and this stimulates to the inquiry of the relation of the act to the employment in respect of its character; and such case must be determined with a view to the surrounding facts and circumstances, as those of the character of the employment, its instrumentalities and agencies, and the nature of the wrongful act. Edwards v. Earnest, 206 Ala. 1, 89 So. 729, 22 A. L. R. 1387; United States Fid. & Guaranty Co. v. Millonas, 206 Ala. 150, 89 So. 732, 29 A. L. R. 520; 18 R. C. L. p. 796, § 254; 39 C. J. pp. 1282, 1283; 26 Cyc. 1533. The foundation of such liability lies in the duty to so conduct one's affairs as not to injure another. Cook v. D. H. Mellown & Co., 212 Ala. 41, 101 So. 662.

 The general authorities are to the effect that the cases on liability of master for the acts of servants may be classified as: (1) When the opportunity to commit the injury is afforded by the position of the employee and the duties he is called upon to perform in his employment. T. C. I. & R. Co. v. Rutledge, 196 Ala. 59, 71 So. 990; Addington v. Amer. Casting Co., 186 Ala. 92, 64 So. 614; Palos Coal & Coke Co. v. Benson, 145 Ala. 664, 39 So. 727; Ill. Cent. Co. v. Johnston, 205 Ala. 1, 87 So. 866; Jebeles-Colias Conf. Co. v. Booze, 181 Ala. 456, 62 So. 12; Miller-Brent Lbr. Co. v. Stewart, 166 Ala. 658, 51 So. 943, 21 Ann. Cas. 1149; Steel v. May, 135 Ala. 483, 33 So. 30; McCormack Bros. Co. v. Holland, 218 Ala. 200, 118 So. 387; Ala. Power Co. v. Watts, 218 Ala. 78, 117 So. 425; Ford v. Hankins, 209 Ala. 202, 96 So. 349. (2) The dangerous character of instrumentalities, appliances, or physical agencies that are placed by the employer in the hands or under the direction and control of the employee, as when intrusted

with a wagon exchanged it for a motor truck without authority. Cook v. D. H. Mellown & Co., 212 Ala. 41, 101 So. 662; Ill. Cent. Co. v. Johnston, 205 Ala. 1, 87 So. 866; Emison v. Wylam Ice Cream Co., 215 Ala. 504, 111 So. 216; Stephens v. Walker, 217 Ala. 466, 117 So. 22, 25; McCormack Bros. Co. v. Holland, supra; Rooks v. Swift, 210 Ala. 365, 98 So. 16; 6 Labatt's Master & Servant, § 2292. And (3) authorization, express or implied. Jebeles & Colias Conf. Co. v. Booze, 181 Ala. 456, 460, 62 So. 12; Hardeman v. Williams, 150 Ala. 415, 43 So. 726, 10 L. R. A. (N. S.) 653; Birmingham Ledger Co. v. Buchanan, 10 Ala. App. 527, 536, 65 So. 667, and authorities; Steel v. May, supra; Miller-Brent Lbr. Co. v. Stewart, supra; Supreme Lodge v. Kenny, 198 Ala. 332, 73 So. 519, L. R. A. 1917C, 469; Seaboard Air Line Ry. Co. v. Glenn, 213 Ala. 284, 104 So. 548; Emison v. Wylam Ice Cream Co., supra.

 The general rule of responsibility, as stated by this court, is that, if the act resulting in the injury complained of was within the scope of the servant's employment, the master will be liable therefor, although the act was in violation of the master's instructions as to the *method* of performing the work, or contrary to instructions, or expressly forbidden by him. Burger v. Peerless Lumber Co., 197 Ala. 470, 73 So. 77, where mistake and negligence in loading and using an elevator resulted in injury to the sprinkler system; Republic I. & S. Co. v. Self, 192 Ala. 403, 406, 68 So. 328, L. R. A. 1915F, 516, where the servant, to gratify his own resentment, stepped aside from his employment to abuse another; Birmingham Macaroni Co. v. Tadrick, 205 Ala. 540, 88 So. 858; Shope v. Alabama F. & I. Co., 195 Ala. 312, 70 So. 279; Hardeman v. Williams, 169 Ala. 50, 53 So. 794; T. C. I. & R. Co. v. Rutledge, 196 Ala. 59, 71 So. 990; New Morgan County B. & L. Co. v. Plemmons, 210 Ala. 286, 98 So. 12, where the officers, agents, or foremen in charge or in the furtherance of the master's business made arrest of or assault upon the trespasser, etc.; Supreme Lodge v. Kenny, 198 Ala. 332, 73 So. 519, L. R. A. 1917C, 469, proceeding upon the theory of apparent authority under the evidence; United States Fidelity & Guaranty Co. v. Millonas, 206 Ala. 147, 89 So. 732, 29 A. L. R. 520, where the act was settlement of a claim for insurance, and to that end sought discharge of the claimant. In Wells v. Henderson, 200 Ala. 262, 76 So. 28, L. R. A. 1918A, 115, there was murder by the foreman in a quarrel that arose from the use of abusive language. Cook v. D. H. Mellown & Co., 212 Ala. 41, 101 So. 662, held *one hired to drive a wagon and deliver groceries* was not acting within the scope of his employment while driving a motor truck, which he took without the employer's knowledge or consent; and in Emison v. Wylam Ice Cream Co., 215 Ala. 504, 111 So. 216, it was held the master's nonliability—under the respondeat

superior rule—for negligence of one employed by a servant did not absolve the master from liability for intrusting dangerous instrumentality to his servant, who in the course of the business intrusts the particular instrumentality and service to a third person, who causes injury therewith; Stephens v. Walker, 217 Ala. 466, 117 So. 22; 54 A. L. R. 849 et seq.

And Labatt says (volume 6 [2d Ed.] p. 6921 et seq.): "The master cannot be held liable where it appears that the management of the vehicle or riding horse ,which inflicted the injury was neither a function with which the servant was intrusted by the terms of the contract of hiring, nor a function which, whether on the ground of an emergency or for some other special reason, he was impliedly authorized to assume at the time when the injury was inflicted. If the vehicle which caused the plaintiff's injury belonged to a person other than the servant's master, the master's liability will depend upon whether the servant was authorized, expressly or impliedly, to hire or borrow it for the purpose of performing his prescribed duties." Sections 2276, 2296.

In Wells v. Henderson Land Co., 200 Ala. 262, 76 So. 28, L. R. A. 1918A, 115, is quoted, as the rule that has not been departed from, the declaration by Judge Stone to the effect: "In Gilliam v. S. & N. A. R. Co., 70 Ala. 270, it was declared: 'If the agent, while acting within the range of the authority of his employment, do an act injurious to another, either through negligence, wantonness, or intention, then, for such abuse of the authority conferred upon him, or implied in his employment, the master or employer is responsible in damages to the person thus injured. But, if the agent go beyond the range of his employment or duties, and of his own will do an unlawful act injurious to another, the agent is liable, but the master or employer is not.'"

In Goodloe v. M. & C. R. R. Co., 107 Ala. 233, 240, 18 So. 166, 167, 29 L. R. A. 729, 54 Am. St. Rep. 67, it is declared: "It is said, on the point under consideration, that the rule of the responsibility of the master for the acts of his servant, 'does not apply simply from the circumstance that at the time when the injury is inflicted the person inflicting it was in the employment of another; but that, in order to make the master liable, the act inflicting the injury must have been done in pursuance of an express or implied authority to do it. That is, it must be an act which is fairly incident to the employment; in other words, an act which the master has set in motion.' * * * 'And generally, where the injury results from the execution of the employment, the master is liable.'"

■ The theory of the cases of liability of the master for wrongful acts of a servant committed through the use of some instrumentality is that, while performing the act for the benefit of the master, the master has armed the servant with power or the use of the instrumentality, and must therefore see, at his peril, that the power or the instrumentality is not negligently used. It is upon this principle that the owner of an automobile which he intrusts to his servant or employee is responsible for its negligent operation, if that operation is connected with the business of the master, and upon the same principle it is held that the master may be liable for the negligent use of an automobile by some one temporarily engaged by the servant to assist him, or to drive the automobile in his stead, not because the servant had the authority to employ assistance, but because, having intrusted the instrumentality to the servant, the master is responsible for its use or abuse.

The appellant did not intrust to Benton the use of an automobile, but specifically employed him to perform his errands upon a bicycle. Accordingly he hired the automobile wholly without authority from or the sanction of the appellant, and it would be unjust to hold the railroad company liable for the negligence of Benton, merely because he happened to be at the time a messenger engaged on an errand for appellant. That is to say, for purposes of his own, and to serve his own physical convenience, young Benton hired the automobile. Its use was neither authorized by appellant nor reasonably necessary to the accomplishment of Benton's errands. He had a definite schedule of travel at definite hours, which he was expected to make, and habitually did make on a bicycle.

There was neither express authority nor any authority that can be implied from the nature of necessities of the employment. No emergency existed for such change in transportation, and it would be dangerous to extend the doctrine of respondeat superior to the present instance. This case is to be observed and distinguished from those in which the employee was intrusted with an instrumentality, and thereafter misused it, or acted contrary to instructions; for in those instances the liability is grounded, not upon the theory of authority, express or implied, but that the employer, under the doctrine "sic utere tuo non alienum lædas," is charged with the inescapable duty of seeing that his own instrumentalities are not improperly or wrongfully used.

■ It is insisted that a contradictory tendency in the evidence was the result of the cross-examination of codefendant Benton. In Jones v. Bell, 201 Ala. 336, 77 So. 998, it was declared that, if there was a tendency in the nature of material conflict in the evidence of a witness, as between his direct and cross-examination, a jury question is presented under our scintilla rule. McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135. The witness Benton had stated the terms of his employment, and by which it was the contemplation of the parties that he use a bicycle, and in response to cross-examination and re-examination said:

"I didn't talk with Mr. Cooper about my job.

I told Mr. Clarke Mr. Cooper told me they would give me a job back, but they wanted to wait until after this lawsuit was over. I said to Mr. Clarke it wasn't any use for me to go back to work, because they would think they hired me over to be a witness on their side. That is exactly what I told Mr. Clarke. When my bicycle wasn't working, I sometimes went on the street car to carry this mail. The company did not know that; Mr. Thompson, or any of them, did not know it. The Frisco did not furnish me with a bicycle, but left it with me to get the bicycle and carry the mail, and get the messages transferred from one point to another. I was to carry the messages, rain or shine, in the best way I could. * * *

"On the day of this accident it was about 12:20 when I gave the baggage agent the mail for 106. After that, before I went back to East Thomas, I had to go to the L. & N. and Seaboard and get some interchange. The Seaboard office is on Thirty-Second street, and the L. & N. office on Eighteenth street. I went to those places on my wheel, going first to the Seaboard and then to the L. & N. I couldn't tell when I got through with the L. & N. I was supposed to have three hours to do that work in and be back out at East Thomas. I did that work all the time. * * * It was Mr. C. J. Thompson, assistant to the superintendent of terminals, who told me, when I took the job as messenger, I would have to ride a wheel and be out in the rain. It was another Mr. Thompson, who was engineer or fireman for the Frisco, whose car I borrowed on one occasion to use. The occasion when I used Mr. Thompson's car, and an occasion about Christmas when I had hired a car, were the only previous occasions I had used a car in performing my duties. Nobody had ever given me permission to use a car."

This did not present a conflict that warranted a submission of the cause to the jury as to the appellant. When all the evidence is considered, and reasonable inferences therefrom, it is shown not to have been in contemplation of the master that Benton, without chauffeur's license, would employ as dangerous an agency as an automobile for use in said messenger service. He, at all times, stated positively that his superiors had not given him authority to use an automobile in delivering messages; that he did not have a chauffeur's license; that he hired the automobile on the day of the accident, of his own accord; that he had only used an automobile in carrying messages on two occasions; that this was done without the knowledge or consent of his superior having charge of the matter for the master; that when he was employed by the superintendent he was told that he "had to ride a bicycle." Under the direct and cross examination of this witness, or in the testimony of any other witness, was there conflict as that, under our rule, a jury question was presented? The general affirmative charge requested by appellant should have been given.

Reversed and remanded.

ANDERSON, C. J., and GARDNER, BOULDIN, and FOSTER, JJ., concur.
SAYRE and BROWN, JJ., dissent.