153 So. 231

## GULF REFINING CO. v. McNEEL.

### 3 Div. 83.

Supreme Court of Alabama.

Jan. 18, 1934.

Rehearing Denied March 22, 1934.

Steiner, Crum & Weil and Sam Rice Baker, all of Montgomery, for appellant.

Thos. B. Hill, Jr., and Wm. Inge Hill, both of Montgomery, for appellee.

KNIGHT, Justice.

Suit by plaintiff—appellee—against the Gulf Refining Company and Karl D. Henderly, to recover damages for a personal injury, which the plaintiff alleged that he received as the proximate result of the negligence of the said Henderly and of one M. L. Pate, who was at the time an employee of the Gulf Refining Company, and acting within the line and scope of his said employment.

It is alleged in the third count of the complaint, the count upon which the cause was tried, that on or about the 5th day of November, 1932, the automobile of the defendant Henderly was being towed in a westerly direction along Scott street, in the city of Montgomery, at or near the intersection of Scott street and South Court street, both of which were public streets of said city; that said car of the defendant Henderly was at said time and place under the joint control and operation of said Henderly, and of said Pate, servant aforesaid of the Gulf Refining Company, and acting at the time within the line and scope of his employment; that the said Henderly car was occupied by Mr. Henderly and guided by him, and was attached to another automobile by means of a tow rope. The last-mentioned car was being driven or operated by the Gulf Refining Company's servant Pate. That the said Henderly, and the said servant of the Gulf Refining Company, who was then and there acting within the line and scope of his employment, so negligently conducted themselves in and about the towing or operation of the defendant Henderly's automobile that, as a proximate result of such negligence, the plaintiff, a pedestrian upon the public street, tripped over said tow rope, and, as the result and consequence thereof, he—plaintiff—received the personal injuries catalogued in his complaint.

Pleas of the general issue and contributory negligence were interposed by each of the defendants.

The trial resulted in a verdict for defendant Henderly, and a verdict against the Gulf Refining Company, fixing plaintiff's damages at $2,500, and judgment was entered accordingly. From this judgment, the Gulf Refining Company appeals.

In the view we take of the case, it is proper that we should state the material facts which appear in the record.

The plaintiff, on the occasion he received his injuries, was walking along South Court street, on the east side of the street, going in the direction of the city. He had reached the intersection of South Court and Scott streets, and had the right of way as he undertook to pass over the intersection of the two streets. The car driven by Pate, and the Henderly car were standing at the intersection, headed westward along Scott street, the Henderly car being in the rear and attached to the Pate car by a rope. The rope was only a few feet in length. Lights were on in the city. The accident occurred between the hours of 5 and 6 p. m. The plaintiff, not seeing the rope, attempted to pass between the two cars in his effort to cross the intersection, and tripped over the rope, and fell violently upon the pavement. There was no red light or other signal to indicate the presence of the rope. It is fairly inferable from the evidence that the chain or rope which was used in towing the Henderly car was five or six feet in length, and this was about the distance between the two cars at the time the plaintiff attempted to pass between them, as they stood still at the intersection.

We may well concede that the evidence was such as to make a jury question as to negligence on the part of both Pate and Henderly.

As to the defendant Gulf Refining Company, it was not enough to carry the case to the jury to show that Pate, its servant or agent at the filling station, was guilty of negligence in the operation of the car at the intersection of Scott and South Court streets, and that plaintiff was injured as a result of such negligence.

The burden was also upon the plaintiff to show to the reasonable satisfaction of

the jury that the said Pate was about his master's business, and acting within the line and scope of his employment at the time of the accident. Was the evidence, on the last stated issue, sufficient to carry the case to the jury as to the defendant Gulf Refining Company?

The evidence is without dispute that the Gulf Refining Company, on the day of the accident, owned and operated a filling station on South Perry street; that E. E. Godbold was the general manager of the Gulf Refining Company in Montgomery, and was such on November 5, 1932; that L. D. Barber was its service station superintendent, supervising the service stations; that L. M. Pate was, at the time, employed by the Gulf Refining Company, at its said filling station, and his duty was to grease cars; that J. D. Duncan was also in the employment of said defendant, at its said station, and his duties were to serve customers as they came in for water, air, and gasoline, and whatever other service they called for.

On the evening of November 5, 1932, the defendant Henderly drove his car up to defendant's said filling station for the purpose of having the oil changed in the car, and in putting back the drain plug in the crank case, "they stripped the threads on the drain plug." Duncan was the man who undertook to change the oil, and, when Pate appeared on the scene, it was agreed between Duncan and Pate that the only thing that could be done was to take the car to a garage to be repaired.

In this connection, Mr. Duncan testified:

"I recall the occasion when Mr. Henderly brought his car to the Gulf Refining Company on Perry Street for the purpose of having the oil changed. I went to change the oil. The grease man was out at that time. I put the car on the rack and I removed the plug and put it back. The threads were stripped, and by that time the grease man came back and took it down town. Mr. Pate was the grease man. I told him to look at it and see what he thought it would take to fix it, and he said he thought it would have to be re-threaded in there. He carried it down to a shop. I don't recall the conversation that took place there when Mr. Pate and Mr. Henderly left to go to town. I don't recall anything that was said by Mr. Pate. I told Mr. Pate at the time that I would take care of the expense to the car, personally. * * * I later paid back to the Gulf Refining Company, or to Mr. Henderly, the amount of money it took to repair the damage to the plug in his car. I didn't ask Mr. Pate to tow the car to town for me. I have been instructed out there at that filling station by Mr. Barber or Mr. Godbold of the Gulf Refining Company not to make any repairs to customers' cars or trucks. I was instructed to that effect on or before November 5, 1932. I have been instructed not to drive customers' cars, or to pull them or tow them anywhere. There was no car at the Gulf Refining Company filling station owned by the Gulf Refining Company, and operated by them, for that purpose at the time I was employed there, on November 5, 1933. I have not been authorized to operate car by himself (cars myself) belonging to anybody else, for or on behalf of the Gulf Refining Company. * * *

"I gave a check for the money paid to Mr. Henderly, my personal check, made payable to the company. I wasn't driving the car at the time this accident happened."

Mr. L. M. Pate, called by the Gulf Refining Company, testified, so far as we deem it necessary to here state his testimony:

"Well, I had been to town in the meanwhile, and Mr. Duncan had drained the oil out of Mr. Henderly's car, and was trying to get the plug back, tightened back in the car, and by me being the one that operated the rack, he called me back and asked my opinion about whether the plug would tighten back in the automobile. After I looked at it with a flash light and felt all up there, I found the threads were gone, found out it could not be tightened on account of the threads being stripped out in the opening. After that, he asked me what would I do about it. I told him I didn't know, I didn't have anything to do with it, it would be between him and Mr. Henderly to settle it. He told me that if I would pull the car to get it fixed, that he would pay for the plug being re-threaded and put in there. So, I took my car and pulled the car down, and it happened on the way down there."

This witness further testified that it was just a mutual agreement between himself, Duncan, and Henderly to take the car to a garage for repairs. That Duncan said to Pate that if Pate would take the car to the shop he would pay for having it fixed, and that Pate replied, "Well, if you want to do that, I will carry it down so he can have his car and get it fixed." He further testified that he used his individual car in towing the Henderly car to town, and that the car was not used in or about the business of the Gulf Refining Company; that it was only used for

his personal convenience. That he had been instructed prior to November 5, 1932, not to operate customers' cars, and not to tow them while on duty; but that after they get off duty they do as they pleased, but not so while on duty.

On cross-examination by the attorney for Mr. Henderly, the witness Pate testified:

"My interest in towing him to town to get his car fixed, was just a personal service. He didn't hire me to tow it. Mr. Duncan didn't hire me to tow it. I was just doing it out of the kindness of my heart to the customer of the Gulf Refining Company. Mr. Duncan and I just came together with the agreement that we didn't see anything to do but take it down and have it fixed. I didn't specially tell him that. It had been broken there, and I thought it ought to be fixed."

E. E. Godbold, the general manager of the Gulf Refining Company in Montgomery, testified that the employees at the filling station had been fully instructed not to make repairs or adjustments to any of the customers' cars or trucks that came in; that the Gulf Refining Company did not own or operate any car at that filling station on November 5th, in connection with the station; that Mr. Pate was never authorized to operate or use a car of his own, or any one else, for or on behalf of the business of the company; that, to the contrary, he had been positively instructed not to do so.

Mr. Barber, the service station superintendent, testified that the Gulf Refining Company had never authorized its employees to make repairs on customers' cars, and that they had been instructed not to drive automobiles on behalf of the Gulf Refining Company. That Mr. Pate had not been authorized to tow or pull the automobiles of any of its customers, and that the company does not own any automobile that it furnishes for filling station operators in Montgomery. That "where an employee has negligently injured a car of a customer, the instructions are they are to get in touch with us."

As we see it, the testimony fully shows the duties of the agents Duncan and Pate, and the scope of their authority. On these matters there is no dispute in the evidence.

The testimony without any sort of conflict establishes the following facts: That the said Duncan and Pate were not authorized to, but were positively forbidden to drive customers' cars, or to repair them; that the company at no time furnished these servants or agents any cars to be used in its business;

that their duties were confined to service at the filling station, selling gas and oil to customers, who appeared at the station; that they were positively forbidden to tow cars; that the car used to tow Henderly's car to the garage on the occasion of plaintiff's injury was the private car of Pate, used solely by him for his personal convenience; that its use by Pate on the occasion of the plaintiff's injury was without the knowledge or consent of the Gulf Refining Company, and it was entirely beyond the range of Pate's employment to use any car in his principal's business. No such instrumentality had ever been intrusted to him by his principal; that, while the master may have been liable for any negligence of the employee Duncan in stripping the threads on the oil plug of Henderly's car, yet it was no part of the duties of that employee to secure a private car to tow the injured one to a garage for repairs.

The case here presented is not one of abuse of authority conferred upon the employee, but is one where the employee was wholly without authority, express or implied. In many instances the master may be liable where the servant abuses his authority, but no such liability arises where there was a total lack of authority.

We can readily agree with appellee's able counsel, that a master will not be allowed to escape liability for an injury committed by his servant, within the line and scope of his employment by setting up private instructions or orders given by him. But the sine qua non of liability in such a case is, that the servant, in committing the wrongful act, resulting in the injury, was acting within the line and scope of his employment. In other words, the servant must not only be about his master's business, but must be acting within the line and scope of his employment. It is by putting the servant in his place that the master becomes responsible for the acts of the servant, done within the line and scope of his employment. Of course, if the act was such as was incident to the performance of the duties intrusted to him by the master, the master cannot escape liability because of the abuse of authority. The question, in such cases, has always been, Was there any authority, express or implied, on the part of the servant to do the act? If there was, there would be liability, notwithstanding the fact that the servant may have disregarded the directions of the master. Steele v. May, Buttrey & Cooney, 135 Ala. 483, 33 So. 30.

The rule of our decisions on this subject is, as stated in the case of Rochester-

306

Hall Drug Co. v. Bowden, 218 Ala. 242, 118 So. 674: "If an employee is engaged to perform a certain service, whatever he does to that end, or in furtherance of the employment, is deemed by law to be an act done within the scope of the employment. Gulf, M. & N. R. Co. v. Havard, 217 Ala. 639, 117 So. 223; National Life & Accident Ins. Co. v. Cruso, 216 Ala. 421, 113 So. 396; 39 Corpus Juris, 1283. Such conduct, to come within the rule, must not be impelled by motives that are wholly personal, or to gratify his own feelings or resentment, but should be in promotion of the business of his employment. Republic Iron & Steel Co. v. Self, 192 Ala. 403, 68 So. 328, L. R. A. 1915F, 516. If the conduct was 'committed in the accomplishment of objects within the line of his duties, or in and about the business or duties assigned to him by his employer,' the master is responsible. Palos Coal & Coke Co. v. Benson, 145 Ala. 664, 39 So. 727."

Appellee in brief makes earnest argument that an emergency had arisen in the business of the Gulf Refining Company at its South Perry street filling station, which called for prompt action, requiring that the employees at that station should step beyond the letter of authority conferred upon them, and that this emergency authorized and justified the employees in the action taken in towing the car in question to a garage for repairs. It was not a life and death case. Henderly, as for any negligent act of the employee Duncan, resulting in injury to his car, had his remedy therefor. It was the duty of the employee, under the evidence, to report the facts to the Gulf Refining Company for their consideration, and not for the employee to take it upon himself to right the wrong, if any, especially if doing so involved the violation of a positive instruction of his employer. In pursuing the course he did in this case, the employee stepped beyond the line and scope of his employment. The principle of respondeat superior cannot be extended to cover the present situation. To do so, would establish a precedent unsupported by the holdings of this court, as far as we are advised.

In this connection, what was said in the case of St. L.-S. F. R. Co. v. Robbins, 219 Ala. 627, 123 So. 12, 14, is somewhat in point. In that case it was observed:

"The theory of the cases of liability of the master for wrongful acts of a servant committed through the use of some instrumentality is that, while performing the act for the benefit of the master, the master has armed the servant with power or the use of the instrumentality, and must therefore see, at his peril, that the power or the instrumentality is not negligently used. It is upon this principle that the owner of an automobile which he intrusts to his servant or employee is responsible for its negligent operation, if that operation is connected with the business of the master, and upon the same principle it is held that the master may be liable for the negligent use of an automobile by some one temporarily engaged by the servant to assist him, or to drive the automobile in his stead, not because the servant had the authority to employ assistance, but because, having intrusted the instrumentality to the servant, the master is responsible for its use or abuse.

"The appellant did not intrust to Benton the use of an automobile, but specifically employed him to perform his errands upon a bicycle. Accordingly he hired the automobile wholly without authority from or the sanction of the appellant, and it would be unjust to hold the railroad company liable for the negligence of Benton, merely because he happened to be at the time a messenger engaged on an errand for appellant. * * *

"There was neither express authority nor any authority that can be implied from the nature of necessities of the employment. No emergency existed for such change in transportation, and it would be dangerous to extend the doctrine of respondeat superior to the present instance. This case is to be observed and distinguished from those in which the employee was intrusted with an instrumentality, and thereafter misused it, or acted contrary to instructions; for in those instances the liability is grounded, not upon the theory of authority, express or implied, but that the employer, under the doctrine 'sic utere tuo non alienum lædas,' is charged with the inescapable duty of seeing that his own instrumentalities are not improperly or wrongfully used."

It only remains to be said that the opinion here is, that the defendant Gulf Refining Company, upon the evidence, was due the affirmative charge in its behalf. In refusing this charge, the court below committed error. It therefore becomes unnecessary to review the other questions presented by appellant.

Let the judgment of the circuit court be reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.