(130 So. 782)

## BLACKMON v. STARLING.

### 6 Div. 559.

Supreme Court of Alabama.

Oct. 16, 1930.

Rehearing Denied Nov. 28, 1930.

Harris Burns and Collins Urquhart, both of Birmingham, for appellant.

**THOMAS, J.**

The question presented for decision is the propriety of refusing appellant's requested general charge.

The decisions are collected in McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135, and Jones v. Bell, 201 Ala. 336, 77 So. 998, and the rule need not be repeated as to the giving and refusal of such charge.

It must be admitted that the map or drawing exhibited by brief of appellant was his interpretation of the evidence, rather than supplying the diagram employed in the introduction of the evidence. When the bill of exceptions is given careful consideration, the absence of such blackboard drawing from the record will not prevent a decision on the merits of the issue presented by appellant. Burton & Sons Co. v. May, 212 Ala. 435, 441, 103 So. 46.

It is declared in this jurisdiction that, on proof of ownership of the vehicle, and that its driver was that of defendant, a rebuttable presumption is raised that he was driving within the line and scope of his employment. Such prima facie presumption can be overcome by proof, and reasonable inferences to the contrary, which are undisputed, clear, strong, and convincing, negativing such presumption. Penticost v. Massey, 202 Ala. 681, 81 So. 637; Ford v. Hankins, 209 Ala. 202, 204, 96 So. 349; Dowdell v. Beasley, 205 Ala. 130, 87 So. 18; Rooks v. Swift & Co., 210 Ala. 364, 98 So. 16; Tullis v. Blue, 216 Ala. 577, 578, 114 So. 185; Toranto v. Hattaway, 219 Ala. 520, 122 So. 816.

And our decisions are further agreed that, where there has been a deviation or departure from the master's business, and the scope of the agent's employment, where such personal purpose and benefit has been accomplished, and the agent is in the process of returning to the sphere of his employer's business, the question as to whether he is acting within the line and scope of his employment and his master's business is for the jury under appropriate instructions from the court. Edwards v. Earnest, 206 Ala. 1, 89 So. 729, 22 A. L. R. 1387; Id., 208 Ala. 539, 94 So. 598; Rooks v. Swift & Co., 210 Ala. 364, 98 So. 16;

Ewing, Trawick & Clark, of Birmingham, for appellee.

St. Louis-San Francisco Ry. Co. v. Robbins, 219 Ala. 627, 123 So. 12; Anderson v. Southern Cotton Oil Co., 73 Fla. 432, 74 So. 975, L. R. A. 1917E, 715.

In this case the presumption indulged was where the negligent agent was the regular chauffeur, driver, or employee of defendant, using defendant's car. Just what the driver's mission was at the time of the injury is the material question of fact to be determined from the reasonable tendencies of the evidence. It is defendant's contention that said driver, Brewer, was instructed to carry the truck to the garage, and that he went down Avenue F and thence to Avenue I to his home, and thence he proceeded along Avenue C to the place of the accident. Plaintiff's witness Carlisle directly contradicts this tendency of defendant's evidence, by saying that a short while, less than thirty minutes before the accident, his (defendant's) truck with the mattress in it passed his house on Avenue D, proceeding in the direction of Fairfield and from Ensley. This evidence was denied by Brewer, saying on cross-examination that, if he did go along Avenue D, he was not on any personal errand, but on that of appellant Blackmon. Hence the evidence of appellant is disputed, and presents the conclusions of fact that only the jury may draw under proper instructions by the court. If the evidence of Carlisle be true, the jury were warranted in finding that Brewer was returning from a mission for his master at the time the Starling child was killed; for Brewer stated that, if he was on Avenue D with the truck, it was only on a mission for his employer. This phase of the evidence was not explained by appellant nor counsel, from the evidence.

■ Examining the phase of the evidence to the effect that the uncle of Brewer got on the truck at Thirty-Fourth street and Avenue C as Brewer was going toward Ensley and the garage where the truck was stored, it is shown that the uncle and Brewer did not meet by prearrangement or design; for the driver saw the uncle walking, and called and asked his destination, and on reply invited him to ride, saying the truck was going that way. This contained the inference that there was no deviation from the master's business to take the truck to the garage, and not for the mission of the driver's uncle. The stop was merely and incidentally to carry the uncle on the way of both driver and guest in the truck; and it is shown that Brewer did not carry the "uncle to work," but to a point where their respective destinations and duties of employment diverged—then to separate—the uncle proceeding to his work and Brewer going on toward the garage where the car was stored. Thus, the taking of the uncle as a passenger does not show a departure from the line and scope of Brewer's business and employment by appellant. It was only after he helped his uncle on his way that he changed the course of said truck and went to the house of his girl friend. Such is the result, since Brewer did not go out of his way to take the uncle aboard or to discharge him from the truck.

■ What of appellant's contention that at the time of the collision Brewer was driving to the way of his girl friend? The undisputed evidence refutes this, since Brewer stated that he *decided to go* to see his friend *after his uncle got out of the truck.* The uncle got out of the truck after the collision with the boy; hence the course of the driver and his truck was not affected by the presence of the uncle nor the subsequent decision of the driver to go to the girl's house. However this may be, the positive testimony of Brewer as to his going with the truck to the garage while on Avenue C, where the collision occurred, was to the effect that he "was going north on Avenue C when (I) he went over Twenty-fifth street—*going towards Ensley,*" going towards the garage of defendant; that he "had instructions at that time, or before that time, to put that car in that garage for that night," and "that was where (he) I was going."

It may be said further that there is conflict in the evidence as to the condition and use of the mattress in the said truck at the time. Defendant's evidence tended to show that it was an old repossessed mattress used for packing, and unfit for resale; the tendency of plaintiff's evidence as to the kind and condition of the mattress was that it appeared or looked "almost a new mattress just lying in the truck" on the occasion in question.

Both the appellant and Leonard Brewer testify that on no occasion did Leonard Brewer make deliveries after closing time, which was 6:00 o'clock in the afternoon. They say that during the Christmas holidays no deliveries were made after closing time, that is, after 6:00 o'clock. In contradiction of this, witness for defendant, Eleanor Kuhn, testified that occasionally such deliveries were made up in the night, and that about 6:00 or 6:30 o'clock was the customary time for closing the store, and was the customary time for Leonard Brewer to leave. According to this testimony, that is, if the regular closing time of the store was 6:30, *the accident happened prior to the regular closing time of the store.* This is a contradictory tendency of the evidence of Brewer and appellant, both of whom state that the regular closing time of the store was 6:00 o'clock in the afternoon.

Witness C. C. Jones, police officer, testified that, when he arrested Leonard Brewer at the home of his girl friend. He admitted he was the driver of the truck, but said that he had not been on Avenue C at all, and said that he did not admit he was on Avenue C, but denied the same until afterwards when he found out

what the microscope showed as to the blood on the truck, and the hair, etc.

The defendant testified that he was convinced that it was not his truck that ran over the deceased, and that he so told Mr. Starling. This was denied by both Mr. Starling and John Angwin, who testified that Mr. Blackmon stated in their presence that it looked very much like it was his truck that killed the deceased.

The uncontradicted testimony shows that Leonard Brewer was in the employ of the defendant; that he was employed to drive this particular truck as a regular truck driver; that he was the only truck driver in the employ of the defendant; that among his duties as a truck driver were to haul furniture, to repossess furniture, and to collect bills for the defendant, and, by inference, was a general utility man of the defendant.

The material questions of fact were resolved in favor of plaintiff and liability of the defendant. There was no error committed on the trial in refusing the affirmative instruction requested by defendant.

Affirmed.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.