176 So. 375

## BIRMINGHAM POST CO. v. MONTGOMERY.

### 6 Div. 33.

Court of Appeals of Alabama.

March 23, 1937.

Rehearing Granted May 11, 1937.

Further Rehearing Denied June 8, 1937.

496

W. H. Sadler, Jr., of Birmingham, for appellant.

Wm. S. Pritchard and David R. Solomon, both of Birmingham, for appellee.

RICE, Judge.

This appeal, by the single appellant Birmingham Post Company, a corporation, is from a judgment against it in a suit filed by appellee against appellant and one Charles A. Preston, Jr., claiming damages for personal injuries alleged to have been inflicted upon the plaintiff by the negligent operation of an automobile by the defendant Preston while acting within the line and scope of his employment by the defendant Birmingham Post Company.

But a single count of the complaint was submitted to the jury; resulting in a verdict against the two defendants in the amount of $350.

Defendant below, Charles A. Preston, Jr., was duly summoned to appear on this appeal, but has failed or refused to do so.

As we understand, what we may decide, or say hereinafter, will in no way affect the judgment rendered against him, his liability, vel non, being in no way dependent upon the issues raised upon this appeal. Tullis v. Blue, 216 Ala. 577, 114 So. 185.

It appears that appellant, the publisher of a newspaper, had, as one of its regular employees, defendant Preston (above). He was paid a weekly wage—his entire time being at the disposal of appellant. He went hither and yon about the city of Birmingham (or, we gather, elsewhere) in the prosecution of his duties—owning and using his own car—but toward the upkeep of, or expense of operating which, appellant made substantial, monthly contributions.

Preston's duties, it appears, were to go just anywhere he was directed, by whatever route he chose, to make photographs—he being the "staff photographer."

It seems that in the morning of each day he would be given, by his employer, a list of photographs it desired made during the remaining part of that day.

Upon the particular day here in question, Preston received his "list"; and, up to the time of the happening of the accident giving rise to this suit, had made a number of photographs for his employer. It appears that by 4:30 in the afternoon of said day he had made all the photographs on his list, save one he was directed to make—in the southeastern part of the city—at about 8 p. m.

Having some idle time on his hands, he went, at 4:30 p. m. of said day, to St. Vincent's Hospital and took a young lady out for some pastime and recreation. This being accomplished, he was, as we think the evidence affords a fair inference, at about 6:30 p. m. on his way back to said hospital, to take the young lady—where she was to go on duty—as a nurse at 7 p. m.—and also on his way to the southeastern portion of the city—where he lived—and where he expected to (after picking up his mother at a friend's house) get his supper and go a short distance from his home (in the same

section) and make this "8:00 o'clock" photograph.

At about 6:30 p. m., as Preston was driving his car from Highland avenue into 23rd street—and which route was as good as another to go to the southeastern section of the city where he ·was to make the photograph—after getting his supper—at about 8 ˙p. m.—his car ran upon or against appellee.

Preston testified that he was, at the time, on˙ his way back to the hospital to take the young lady who was with him in the car.

Well, doubtless he was. But, as we read the testimony, the jury may well have found that he was, likewise, and at the same time, on his way to the southeastern section of the city for the purpose of taking (or making) the aforementioned photograph at about 8 p. m.—he stating that he expected to eat his supper before he made it.

The chief issue—certainly the deciding issue—upon this appeal is as to whether or not Preston, at the time of the injury to appellee, was engaged "within the line and scope of his employment by appellant."

Appellant practically concedes—as indeed it might as well—that the evidence made a jury question as to whether or not Preston's negligence in the operation of his automobile was the proximate cause of the injuries suffered by appellee.

And, no question is raised here but that, so far as appellant's liability vel non is concerned, it was immaterial that the car in question was owned by Preston, rather than appellant. Berry on Automobiles (6th Ed.) p. 1146, par. 1385; Regal Laundry Co. v. A. S. Abell Co. (1933) 163 Md. 525, 163 A. 845, 847; Caver v. Eggerton, 157 Miss. 88, 127 So. 727.

There was no motion for a new trial, so, the only question for us to decide is as to whether or not there was evidence ·reasonably affording an inference adverse to the contention urged here on behalf of appellant. If there was a "scintilla" of such evidence, there was no error in refusing to give the jury at appellant's request the general affirmative charge to find in its favor. Pelzer v. Mutual Warehouse Co., 217 Ala. 630, 117 So. 165.

Appellant's able counsel strongly contends, here, that this question of whether or not appellant should have had said general affirmative charge given in its favor is ruled by the cases of McCormack Broth-ers Motor Car Company v. Holland, 218 Ala. 200, 118 So. 387, and Dowdell v. Beasley, 205 Ala. 130, 87 So. 18.

But we do not agree.

It is our opinion that said question is governed, here, by that line of cases of which, perhaps, Edwards v. Earnest, 206 Ala. 1, 89 So. 729, 22 A.L.R. 1387, is as good an example as another. See Blackmon v. Starling, 222 Ala. 87, 130 So. 782; Mobile Pure Milk Co. v. Coleman, 26 Ala. App. 402, 161 So. 826, certiorari denied 230 Ala. 432, 161 So. 829; Rooks v. Swift & Co., 210 Ala. 364, 98 So. 16.

As Mr. Justice Thomas wrote, in the opinion for the Supreme Court, in the case of Blackmon v. Starling, supra: "Our decisions are * * * agreed that, where there has been a deviation or departure from the master's business, and the scope of the agent's employment, where such personal purpose and benefit has been accomplished, and the agent is in the process of returning to the sphere of his employer's business, the question as to whether he is acting within the line and scope of his employment and his master's business is for the jury under appropriate instructions from the court." That, as we read the testimony in this case, is the situation here.

There is no doubt that, for a time, Preston had deviated from the line and scope of his employment. But the jury might easily have found that he had finished his "private business" at the time of the accident in question; and was then "in the process of returning to the sphere of his employer's business," merely meaning to incidentally drop his lady friend at the hospital as he passed that way.

The learned trial judge, we are persuaded, gave the jury—on the point in question —the "appropriate instructions" referred to by Mr. Justice Thomas, above, in the following quoted excerpt from his excellent oral charge, to wit:

"The question, then, in this case for you to decide from ·all the evidence in the case is whether his carrying his girl or the young lady to St. Vincent's Hospital was a matter that had no connection with or was entirely removed from and disassociated with the idea of working for the Birmingham Post, or was that merely incidental? Did he at the time have in mind a duty that he was performing and was he, in fact, performing a duty at that time, and did he have in mind the duty that he was performing, for the Birmingham Post, and

was his carrying the young lady to the St. Vincent's Hospital merely incidental? And if you find that it was merely incidental to his work for the Birmingham Post, and at that time he was, in fact, in the service of the Birmingham Post and performing a mission for the Birmingham Post and in the act of going to a place to take pictures for his master; that is, acting within the general line and scope of his employment by the defendant, the Birmingham Post, then the defendant would be responsible for his conduct. But if his conduct in carrying the young lady to ride or to the St. Vincent's Hospital at the time was not merely incidental, if it served to sever and suspend for the time being his relationship as agent for the defendant Birmingham Post, then the defendant Birmingham Post would not be responsible for his conduct."

We approve of what he there said.

It results that we are of the opinion that there was no error in refusing to give to the jury the duly requested general affirmative charge to find in favor of appellant.

The few other questions presented are given but scant attention by appellant's counsel in his brief filed here. We will not discuss them.

It is sufficient to say that in none of them do we see involved a ruling for which the judgment should be reversed.

It is accordingly affirmed.

Affirmed.

## On Rehearing.

SAMFORD, Judge.

A fair statement of the facts in this case is as follows: "The plaintiff was proceeding along the north side of Highland avenue in Birmingham, Ala., in an easterly direction across 23rd street. An automobile driven by the defendant, Preston, was proceeding along the south side of Highland avenue, in an easterly direction, and turned to the left across Highland avenue intending to go in a northerly direction on 23rd street. The accident occurred in 23rd street and on the 'cross walk', or, in other words, within the side lines as extended."

The point really litigated on the trial, and raised by this appeal, is whether or not the defendant, Preston, at the time of the accident was acting within the line and scope of his employment or whether or not he was engaged at the time in a purely personal enterprise?

The evidence upon that issue is to be found in the answers of the Birmingham Post Company to interrogatories propounded to it by the plaintiff under section 7764 of the Code, and in the testimony of Preston, who was examined as a witness by the plaintiff. This evidence was without conflict to the following effect: The Birmingham Post Company published a newspaper in Birmingham, Ala. Preston was in its employ, as a photographer, for the purpose of taking such photographs as it desired, or might designate, for publication in its paper, with no special hours of employment named. The services to be rendered at any time called for by the employer, and from time to time as the editor of the paper might designate. In performing that duty, Preston used an automobile to reach the point where the pictures were to be taken. The automobile used by him and which was involved in this accident was owned by Preston, and not by the Birmingham Post Company. He was allowed $20 per month for the payment of gasoline consumed in the use of his automobile in his work for the Birmingham Post Company, for which he was to make no itemized account.

The accident complained of occurred about 6:30 p. m. on November 23, 1934. On that day somewhere between 8 o'clock and 12 noon, the editor of the paper gave Preston a list of the pictures to be taken that day. At 4:30 in that afternoon the only assignment remaining was to take the picture of a Miss Gambrill at her home at 8 o'clock p. m. Miss Gambrill resided in a residential section in Birmingham known as Forest Park. Preston, himself, resided in that same residential section. Preston did no work for the Birmingham Post between the hours of 4:30 p. m. and 8 p. m. At 4:30 p. m. Preston went to St. Vincent's Hospital in Birmingham and "picked up" Miss Hester, who was a nurse and a friend of his and whom he later married. Miss Hester was in no way connected with the Birmingham Post Company, nor with any duties incident to the employment of Preston. His visit and association with Miss Hester was purely social. After Miss Hester got into the automobile, the two of them drove around casually, and then went on out to Miss Hester's home, where they stayed several minutes and then they went for a ride. At the time the accident occurred Preston was returning Miss Hester to the hospital, where she was required to be by 7 o'clock. The

place where the accident occurred was within a few blocks of the hospital. After the accident, Preston, after rendering some services to the plaintiff, continued on his way and carried Miss Hester to the hospital, and after leaving the hospital went to a nearby home for his mother, who was visiting a friend, and from that point he and his mother went to their home, got out of the automobile, went into the house, and had their evening meal. After the evening meal, Preston got into the automobile at his own home and drove over to the home of Miss Gambrill where the picture was made. After which he went to the municipal auditorium, made other pictures for the Birmingham Post Company, and turned them into the proper official.

In the original opinion in this case, Judge RICE, speaking for the court, was of the opinion that the questions here involved were controlled by that line of cases of which Edwards v. Earnest, 206 Ala. 1, 89 So. 729, 22 A.L.R. 1387, is a fair illustration. On a further consideration of the question, we are of the opinion that the Edwards Case, supra, and others following it may be easily differentiated from the case at bar. In the Edwards Case, supra, there was never an entire deviation from the employment of Robinson to Earnest, and we are persuaded that in the other cases may be found points of difference.

■ It has been consistently held in Mobile Pure Milk Co. v. Coleman, 26 Ala. App. 402, 161 So. 826, and other cases of similar import, that where there has been a deviation or departure from the master's business, and the scope of the agent's employment, where such personal purpose and benefit has been accomplished, and the agent is in the process of returning to the sphere of his employer's business, the question as to whether he is acting within the line and scope of his employment and his master's business is for the jury under appropriate instructions from the court. Blackmon v. Starling, 222 Ala. 87, 130 So. 782. On the other hand, it is just as well settled that an employer is not liable to one who is injured by the negligence of his employee while operating an automobile outside of the line and scope of his employment, as where an employee steps aside from his employment and is on an errand personal to himself, or for his own purpose. Dowdell v. Beasley, 205 Ala. 130, 87 So. 18.

■ In the instant case, it is clear that Preston was engaged on his own mission, entirely disconnected from his employment as a photographer for the defendant, Post Publishing Company, when he engaged Miss Hester for a social ride, at a time and circumstances entirely dissassociated with his employment.

It is as equally clear, and undisputed, that at the time of the accident, Preston had not completed his social engagement with Miss Hester, and, therefore, he was not, and could not have been, in the process of returning to the sphere of his employer's business. For that reason, and upon further consideration, we are of the opinion that the defendant, the Post Publishing Company, was entitled to the general affirmative charge as requested, and that this court was in error in its holding to the contrary.

It follows that the application for rehearing is granted; judgment of affirmance is set aside; and the judgment of the circuit court is reversed and the cause is remanded.

Reversed and remanded.

RICE, Judge (dissenting).

It would seem obvious that I should dissent. As I do.

My views—which were at the time of their promulgation the views of the full court—will be found set forth in the opinion prepared by me, for the court, upon the original submission.

The additional argument—I believe no new principle of law was advanced—submitted by the able lawyer for the powerful appellant, upon application for rehearing, has caused the views of the majority—as appears—to change. My own have not.