4 So.2d 180

**LOUIS PIZITZ DRY GOODS CO. v. DRIESBACH.**

6 Div. 702.

Court of Appeals of Alabama.

April 8, 1941.

Rehearing Denied May 13, 1941.

A. J. Bowron, Jr., and Bradley, Baldwin, All & White, all of Birmingham, for appellant.

Hugh A. Locke and Frank M. James, both of Birmingham, for appellee.

RICE, Judge.

Appellant was a large dry goods merchant, with its place of business located in or near the heart of the City of Birmingham. It delivered goods purchased from it to customers throughout this great City and its suburbs.

The manner of operating its delivery system was, that it rented trucks from the Dixie-Drive-It-Yourself Company, located at Twenty-Third Street and Fifth Avenue, North, in the City of Birmingham, and hired its own drivers to operate said trucks. These drivers, regular employees of appellant, would, under its direction, go, in the morning of each day, to the Dixie-Drive-It-Yourself Garage, located as indicated, get the truck assigned to the particular driver, take it to appellant's store (or place of business), there procure the packages allotted to the particular driver, and proceed to make the deliveries.

Each driver was assigned a specified "territory" in the "delivery area;" and, in making his deliveries, was confined to that territory. *Within* his territory, as we read the testimony, the driver was allowed wide discretion as to what "delivery" was to be made first or last. His instructions were to continue—in his territory—to make deliveries from the time he left the store in the morning until seven or eight o'clock (or later) at night, until, as appellant's "Shipping Superintendent" phrased it, "people get to eating and don't like to be interrupted at night."

It will thus be seen that appellant's drivers had a considerable discretion as to just when they should cease their work for the day.

But they were positively instructed to, when they quit for the day, take the truck, gotten in the morning from Dixie-Drive-It-Yourself Garage, at once, and directly—"considering the paving and everything"—back to said garage. If there were packages—as there nearly always were—remaining undelivered, appellant had an arrangement with Dixie-Drive-It-Yourself Company whereby it would receipt the driver for same, and keep them locked in the truck until the following morning.

Upon the occasion giving rise to this lawsuit, one of appellant's said drivers

was James Winsett. His "territory" was all that part of the City of Birmingham (and vicinity) "North of *First Avenue, North,* through Acipco and West of *19th Street, North,* through Bessemer and Ensley," said territory being designated by appellant, and thoroughly understood by James Winsett, as the "West Route."

Upon the morning of the day in question, James Winsett got his (appellant's) truck as above, went to appellant's store, got his allotment of packages, and proceeded to make deliveries all day in his "West Route." He was furnished a helper, who worked under his supervision. He and his helper said they "knocked off" at about 8:30 that night, when they were in Fairfield. James then, as he had the right to do (under his instructions), let the helper off somewhere in Fairfield, or Ensley, and came on in to Birmingham on 8th Avenue. He stopped at his home and ate his supper.

Then, instead of proceeding to the Dixie-Drive-It-Yourself Garage, he went to a "place" run by a negro woman and "had a drink" (of corn whiskey). This negro woman asked him to take her "over on Southside"—to a place neither in his "territory" nor on his route to the Dixie-Drive-It-Yourself Garage. He agreed to do so, and did do so. And along with her carried a negro man (or boy) nicknamed, and whom we will call, "Saint."

It is without dispute that James had no business for his employer, appellant, on the "Southside;" and that he carried this negro woman and man over there with the express or implied agreement and intention to bring them back to the place from whence they boarded his truck. Of course he would have had to do this before he carried the truck to the Dixie-Drive-It-Yourself Garage to put it up for the night.

Disaster overtook him. Before he ever even reached the place where he had agreed to take this negro woman (with "Saint") on the "Southside," he stopped, at the woman's request, at another place. Here "Saint" got into a fight, cut a negro with his knife—"stuck a fellow," we believe he said—and boarded the truck with James, and they, that is, James did, drove off and left the woman.

James drove North on 17th Street, turned East on Avenue B., and, at the intersection of Avenue B. and Eighteenth Street the truck he was driving collided with a car driven by appellee, under such circumstances that the jury was well authorized in finding James guilty of negligent, even wantonly negligent, conduct.

This suit, resulting in a substantial verdict in favor of the plaintiff, appellee, was brought by Jay G. Driesbach against Louis Pizitz Dry Goods Company, a corporation, claiming damages on account of the collision hereinabove mentioned.

The single decisive question presented by the appeal is as to whether or not James Winsett, at the time the truck driven by him was in collision with the car driven by appellee, was "acting within the line and scope of his employment by appellant," or, as differently phrased, "within the line and scope of his authority as appellant's agent or servant."

We are disposed to borrow the language of the Texas Court used in the case of Southwest Dairy Products Company, Inc., v. L. C. DeFrates et al., which we found reported in 132 Tex. 556, 125 S.W.2d 282, 283, 122 A.L.R. at page 854, to-wit: "Cases involving facts more or less like the facts of this case are legion. We have considered a great many of them from this and other jurisdictions, but do not find it necessary or desirable to discuss them or even cite many of them for they are readily available to the bench and bar, and to harmonize them would be a difficult, if not impossible undertaking. Extensive annotations [of the question before us, and allied questions] may be found in 22 A.L.R. 1397, 45 A.L.R. 477, 68 A.L.R. 1051, 80 A.L.R. 725;" and, we add, 122 A.L.R. 858.

Appellee's counsel, in an effort to sustain the verdict and judgment—said judgment being rendered by what we consider one of the ablest judges ever to sit at nisi prius in our State (or any other, so far as we know)—argue forcibly and ably that, as James Winsett, at the time of the collision of the truck he was driving (admittedly appellant's truck, for the purposes of this litigation) with the car of appellee, was driving in the "general direction" of the garage of the Dixie-Drive-It-Yourself Company, where it was his duty to appellant to take his truck, the jury had the right to infer that even though "Saint" was in the truck with him, and even though there were circumstances indicating that he was helping "Saint" to "get away from a place," he was, at the time of the collision "in the process of returning to the sphere of his employer's business"—taking the truck to

the Dixie-Drive-It-Yourself Garage—so that the question of whether or not he was acting within the line and scope of his employment and his master's business was "for the jury under appropriate instructions from the Court." And they cite the cases of Blackmon v. Starling, 222 Ala. 87, 130 So. 782, and Edwards v. Earnest, 206 Ala. 1, 89 So. 729, 22 A.L.R. 1387, as supporting their contention.

There was a time when the writer would have agreed with them. But the question has been settled to an opposite effect.

We think it without dispute—in fact, appellee's able counsel weakly admit as much—that James Winsett, in taking the negro woman—her name was Lilly Porter, or Lilly Hooten—and "Saint" to the "Southside," entirely "deviated from his employment by appellant."

And in the case of Birmingham Post Co. v. Montgomery, 27 Ala.App. 495, 176 So. 375, we had before us an exactly similar situation. In that case the writer held to the view now urged upon us by appellee's counsel. But the majority of the court held to a different view. And their view was upheld by our Supreme Court. Birmingham Post Co. v. Elizabeth Montgomery, 234 Ala. 553, 176 So. 379.

And while our Supreme Court has made it plain that "denying the petition for certiorari without opinion * * * is not to be deemed an approval of all statements of law by the Court of Appeals" (Mobile Pure Milk Co. v. Coleman, 230 Ala. 432, 161 So. 829, 830); and while in the Birmingham Post Co. v. Montgomery case, supra, it merely "denied the petition for certiorari"—promulgating no "opinion"—still, the question in that case was so clear cut, and so exactly the question here, that we are constrained to believe the pertinent utterances of the majority of this court, speaking through our late, beloved, associate, Wm. H. Samford, had the approval of the Supreme Court.

And there [27 Ala.App. 495, 176 So. 377], where Preston, the Birmingham Post's employee, had "deviated from * * * his employment" by taking "a young lady to ride," and had suffered the accident which caused his employer to be sued, while in the act of returning the young lady to the place whence he got her, but while also going in the general direction of the place of his next duty to the employer, Judge Samford said: "It is equally clear and undisputed, that at the time of the accident, Preston had not completed his social engagement with Miss Hester, and, therefore, he was not, *and could not have been,* in the process of returning to the sphere of his employer's business." (Italics ours.)

Now if that was the law in that Birmingham Post Company case—and it seems to us that it was so in effect declared by our Supreme Court (Code 1923, Sec. 7318, Code 1940, Tit. 13, § 95)—we see no escape from the conclusion, here, that James Winsett, at the time the truck he was driving was in collision with the car driven by appellee, "had not completed his 'social engagement'" (but we mean no invidious comparison) with Lilly Porter and "Saint"—and hence *could not have been* in the process of returning to the sphere of his employer's business. It just seems to us that we are foreclosed by the majority opinion of this Court in the Birmingham Post Co. v. Montgomery case, supra, in connection with the action by our Supreme Court on the petition for certiorari in same.

The trial court was in error in refusing to give to the jury at appellant's request the general affirmative charge to find in its favor.

For this error the judgment is reversed and the cause remanded.

Reversed and remanded.