1 So.2d 906

**BELL et al. v. MARTIN.**

**2 Div. 170.**

Supreme Court of Alabama.

April 17, 1941.

Application for Rehearing Withdrawn
May 14, 1941.

GARDNER, C. J., and BROWN, J., dissenting in part.

Pitts & Pitts, of Selma, and G. E. Sledge, of Greensboro, for appellants.

W. R. Withers and W. P. Gewin, both of Greensboro, for appellee.

184

THOMAS, Justice.

The appeal is from judgment for damages, resulting from an automobile collision. The case was duly presented in oral argument and in brief of counsel. The questions of moment for decision are whether there was evidence to warrant the submission of the eighth count to the jury and whether the agent driving the truck had, under our decisions, departed from the line of duties of his employment in such wise as the master was not liable for the conduct of his servant at the time of the collision and for the damages claimed as a result thereof.

The eighth count of the complaint, to which demurrers were overruled, sought damages for injuries as a proximate consequence of an employee's negligence while acting within the line and scope of his authority and also sought damages for injuries as a proximate consequence of said employee's negligence, was alleged to be an incompetent driver, of which facts defendants, Bell and Bell, had been informed, "or were charged with the duty which would have led them to inform themselves of the fact that said A. J. Holbrook (the driver) was a careless, indifferent, heedless, reckless and negligent driver, * * * and yet with information of said facts * * * or charged with the duty to ascertain said facts" the defendants were alleged to have permitted the use of said truck by said Holbrook.

Without passing on the ruling on demurrer, it is sufficient to say that the evidence was insufficient to warrant the submission of that count to the jury. The court should have given defendants' written general affirmative charge denominated as C.

It is established in this jurisdiction that where there is an abandonment of the master's business for personal reasons of the servant or agent in question, the employment is suspended and the master is not liable for the negligence of such agent or servant during such suspended employment and during the time of his departure from the master's business. Each case must be ruled by its "own peculiar" or particular facts, and when a servant has abandoned his employment by the master (Moore-

Handley Hardware Co. v. Williams, 238 Ala. 189, 189 So. 757), *the mere fact that he is returning* thereto, does not of itself reinstate the servant, agent or agency in his master's employment and establish the engaging in the master's business so as to subject the master to liability and for damages resulting after the departure and before the return is accomplished as of fact.

In Mobile Pure Milk Co. v. Coleman, 230 Ala. 432, 161 So. 829, 830, it is said:

"If an employee, whose work for the time is at the plant of his company, lays down his work, and takes his company's car on a trip solely his own, which includes a trip for personal accommodation of a third person, and after completing his errand returns to his work at the plant, the entire trip, going and returning, is without the line and scope of his employment, and his employer is not liable for negligence in operation causing personal injury.

"This is the logical view, supported in principle by our own cases, also by textwriters, and the weight of authority. Hill v. Decatur Ice & Coal Co., 219 Ala. 380, 122 So. 338; Dowdell v. Beasley, 205 Ala. 130, 87 So. 18; Huddy, Cyc. Auto. Law (9th Ed.) Vol. 7-8, § 96, p. 261; 2 Berry, Automobiles (6th Ed.) § 1369; Fletcher v. Meredith et al., 148 Md. 580, 129 A. 795, 45 A.L.R. 474."

This rule was approved in Koonce v. Craft, 234 Ala. 278, 174 So. 478, 479, when the writer said: "The decision in Hill v. Decatur Ice & Coal Co., 219 Ala. 380, 122 So. 338, is to the contrary, holding that 'In action for injuries on being struck by automobile of defendant while being driven by defendant's employee returning from his home to defendant's plant, evidence held not to establish that automobile was being used in furtherance of defendant's interests, even though warranting inference that automobile was used with knowledge or consent of defendant, and hence no recovery could be had against defendant.' * * *"

In Rooks v. Swift & Co., 210 Ala. 364, 98 So. 16, there was conflict in the evidence as to which of defendant's garages the driver was proceeding to when the accident occurred and such matter presented a jury question as to whether or not he was in the master's business when the accident occurred.

In Blackmon v. Starling, 222 Ala. 87, 130 So. 782, 22 A.L.R. 1387, the agent and agency on the return to the garage as in-

structed or as to delivery of the mattress on the truck before closing time was held to present adverse inferences and made a jury question.

In Mobile Pure Milk Co. v. Coleman, 230 Ala. 432, 161 So. 829, 830, the following observation is made of the above case: "The case of Blackmon v. Starling, 222 Ala. 87, 130 So. 782, holds nothing to the contrary. The rule there stated, as its language imports, has application to cases where the car is being operated in the employer's business, but the driver deviates therefrom upon a personal mission, then returns to the sphere of the employer's business. In such case, it often becomes a jury question whether and to what extent there has been an abandonment of the employer's business, whether both the personal mission and that for the employer are being performed concurrently, and, if not, just at what point on the trip the driver had returned to the work of his employment. This is illustrated by the facts of the Blackmon case, and others there cited."

In Edwards v. Earnest, 206 Ala. 1, 89 So. 729, 730, 22 A.L.R. 1387, we quote the following:

"In Healey v. Cockrill [133 Ark. 327, 202 S.W. 229, L.R.A.1918D, 115], supra, the following quotation from Ritchie v. Waller, 63 Conn. 155, 28 A. 29, 27 L.R.A. 161, 38 Am.St.Rep. 361, there designated as the leading case upon the subject, is quoted with approval:

" 'In cases where the deviation is slight and not unusual, the court may, and often will, as matter of law, determine that the servant was still executing his master's business. So, too, where the deviation is very marked and unusual, the court in like manner may determine that the servant was not on the master's business at all, but on his own. Cases falling between these extremes will be regarded as involving merely a question of fact, to be left to the jury or other trier of such questions.'

" * * * The driver in the instant case had delivered the sugar to his mother, and was then on Twenty First street in the direction of and on his way to defendant's shop, with the inner tubes that he had been sent for, when the accident occurred. From the evidence here outlined, upon this feature of the case the jury could infer that, notwithstanding the deviation from the master's business, the object sought thereby had

been accomplished, and the driver had resumed the business of the master, and at the time of the injury was acting within the line and scope of his employment. * * *"

The same case is reported also in 208 Ala. 539, 94 So. 598.

See, also, Perfection Mattress & Spring Co. v. Windham, 236 Ala. 239, 182 So. 6; Chandler v. Owens, 235 Ala. 356, 179 So. 256; Slaughter v. Murphy, 239 Ala. 260, 194 So. 649; Daniel v. Jones, Ala.Sup., 200 So. 551[1]. The earlier of the above decisions were annotated in 122 A.L.R. 854, 878 when the holding in Southwest Dairy Products Co. v. De Frates, 132 Tex. 556, 125 S.W.2d 282, 122 A.L.R. 854, is the leading case. In speaking of this case, it is said [pages 873, 874 of 122 A.L.R.]:

"In Southwest Dairy Products Co. v. De Frates (Tex.) * * * wherein a servant had departed from his duties in order to drive home for his supper, and an accident occurred while he was returning to take up his duties again, the court declared it was unable to adopt the proposition that when a servant has completed the purpose for which he departed from his master's business and is returning to resume the duties of his employment, he is, while so returning, engaged in the master's business and that the master is therefore liable for injuries caused by his negligence on the return trip. The court said that the master's liability did not rest alone upon the purpose in the mind of the servant, and that the return was referable to and an incident of the departure. Moreover, the fact that the servant owed the duty to the master of returning the car and resuming his employment, and while returning to the zone of his employment was discharging that duty, was declared not to fix liability against the master.

"Moreover, in the following cases, where a trip was from its inception entirely in the interests of the servant, the view has been taken that neither in the going nor in the returning was the driver acting within the scope of his employment so as to render the owner liable:

"Alabama.—See also Mobile Pure Milk Co. v. Coleman, (1935) 230 Ala. 432, 161 So. 829, denying certiorari in 1935, 26 Ala. App. 402, 161 So. 826."

The same rule has been declared by the Supreme Courts of Connecticut, Georgia, Louisiana, Michigan, Minnesota, Nebraska and Texas.

---

[1] 240 Ala. 545.

In the recent case of Paul Daniel v. Sanford Jones, supra, the accident in question occurred while the agent and the "pick up" automobile were engaged in the master's business on the return from the house where he had "picked up and checked up" to the Ligon house where the other agent of the defendant so engaged was resuming his duties on the truck.

In Grimes v. Fulmer, 235 Ala. 645, 180 So. 321, 323, in writing for this court, Mr. Justice Knight said:

"The rule with reference to the ownership of the car raising an administrative presumption that it was being operated in the owner's business is accurately stated in the case of Mobile Pure Milk Co. v. Coleman, 230 Ala. 432, 161 So. 829, 830, where it is observed: 'While the ownership of the car raises an administrative presumption that it is being operated in the owner's business, when the evidence, *clearly* and *without conflict*, shows it was not being so operated, *and the circumstances do not support a reasonable inference to the contrary,* this administrative presumption, one merely for convenience in placing the burden of proof, gives way, and the employer is entitled to an affirmative instruction with hypothesis. Tullis v. Blue, 216 Ala. 577, 114 So. 185.' [Italics supplied.]"

When all the cases in this jurisdiction are understood, under the peculiar facts of each case, they are not in conflict.

By the clear, undisputed and convincing testimony in the case at bar, the driver (Holbrook) had abandoned his employer's business, and at the time of the accident had not resumed the employer's business, and had not reached a point where he could resume the same, and was not on any circuitous route from Selma to Greensboro. On the contrary, he was on a road where he had no right to be and where there was no business to be attended to for his employers. The fact that the driver, before leaving his father's and mother's home, examined the lights on the truck, did not constitute a return to the master's business from which Holbrook had departed sometime prior thereto. He was under a duty to examine the lights on the truck because he was operating the same on a highway of Alabama. That is, it would have been his duty to examine the lights on any automobile or truck that he might have in his possession before going on an Alabama Highway, irrespective of his employment. The fact that he looked at his lights at his father's house, although he had instructions from his master to check the lights, did not reinstate him in that employment, any more than the further fact that he drove with oil in the engine, gasoline in the tank or guiding the steering wheel. These are matters incident to driving a motor vehicle and if such matters reinstated his employment, it would be difficult to conceive of a case where a driver could possibly abandon his employment by pursuing a mission of his own so long as he exercised such proper duties incident to driving a truck. Such matters were not carrying out his contract of hire and were not incident thereto; they were merely incident to the proper care of the truck which it was his duty, under the law, in his return from the place where, and when, without permission, he left his master's employment.

It may be said further that the mere fact that the driver proposed to proceed on to Selma after he arrived at Greensboro and delivered the freight to Bell, as it was his duty to do, no more of itself reinstated him into his master's employment than the fact he proposed to return to Selma, even while he was proceeding toward his father's house on his personal mission from Greensboro. The line of reasoning that goes through the cases is that when the action of the driver is in execution of a contract of hire, although he executes the same by methods or ways of his own and although he adopts a different or circuitous route, then the acts are in the line and scope of his authority, but where there has been an abandonment and the driver must return to the place of such abandonment before he can commence carrying out what he was hired to do, then to such extent the employment is suspended, *both on the outgoing and return trip.* Such is the result in this case, because the duty to return the truck with the freight thereon is an incident to the wrong of abandoning the path of duty in the first place.

At the time of the collision, Holbrook was in the process of going back to Greensboro with the same truck and the same freight that he left with in the first place, and he was about a mile out from the center of town on a road not within the permit of the owner of the truck. The principle has been clearly stated in Dockweiler v. American Piano Co., 94 Misc. 712, 160 N.Y.S. 270, 271; Id., 177 App.Div. 912, 163 N.Y.S. 1115, as follows: "Where there has been a temporary abandonment of an

employment, the servant cannot ordinarily be said to have returned to his master's service until he at least reached a point in a zone within which his labors would have been consistent with an act of deviation merely, had the original act been such in its other circumstances as to have been one of deviation, and not one of temporary abandonment."

In Southwest Dairy Products Co. v. DeFrates, supra [132 Tex. 556, 125 S.W.2d 284, 122 A.L.R. 854], the Texas Court said: "The test of liability is whether he was engaged in his master's business and not whether he purposed to resume it. It is equally true that Henderson owed the duty to his master of returning the car and resuming his employment and, while returning to the zone of his employment, he was discharging that duty, but that fact does not fix liability against the master. It was Henderson's own wrong in driving away that created the duty to return, and in returning he was but undoing that wrong. The return was referable to, and an incident of the departure. He was no more engaged in his master's business while returning to, than while departing from his path of duty. Fletcher v. Meredith, 148 Md. 580, 129 A. 795, 45 A.L.R. 474; Model Laundry v. Collins, 241 Ky. 191, 43 S.W.2d 693; Cannon v. Goodyear Tire & Rubber Co., 60 Utah, 346, 208 P. 519; Brinkman v. Zuckerman, 192 Mich. 624, 159 N.W. 316; Anderson v. Nagel, 214 Mo.App. 134, 259 S.W. 858; Colwell v. Aetna Bottle & Stopper Co., 33 R.I. 531, 82 A. 388."

The recent case of Parrott et al. v. Kantor et al., 216 N.C. 584, 6 S.E.2d 40, 43, discussed cases on the point involved in the case at bar and then follows the rule as set out in the above mentioned cases. The court said:

"Blashfield, Permanent Edition, in Section 3051, Vol. 5, page 212, speaking with respect to returning from deviation, says: 'The majority rule, and probably the better view, is that the relation of master and servant is not restored until he has returned to the place where the deviation occurred, or to a corresponding place, some place where in the performance of his duty he should be,' citing decisions of courts in many states. In Humphrey v. Hogan, 104 S.W.2d 767, the Court of Appeals of Missouri says that the weight of authority is well stated in this section. See also Annotations 22 A.L.R. 1414, 45 A.L.R. 487, 68 A.L.R. 1056, 80 A.L.R. 728.

"In Graves v. Utica Candy Co., 209 App. Div. 193, 204 N.Y.S. 682, it was held that when the driver returned from his regular trip and went down the street on which his employer's place of business was located and got to a point where he could have driven into his employer's garage, but failed to do so, from that moment he abandoned his employer's service, and his trip twenty six miles north of his employer's place of business and his return trip, occurred after he had abandoned his duty to his employer, were wholly without his scope of employment, and the employer was not liable for injuries arising out of the accident, notwithstanding the fact that at the time of the accident the driver was on his way back to his employer's garage.

"In Virginia Ice & Freezing Corp. v. Coffin, 166 Va. 154, 184 S.E. 214, 215, the Court said: 'Of course a servant is not required to return by air line from an errand performed, nor must he adopt the shortest practicable route. A detour in reason does not change his status, but an abrupt and unmistakable departure for some purpose of his own does.' In this case where a truck driver had been instructed to make a delivery and return to his employer's factory and on his return trip had reached a point three or four blocks distant from the plant when he started to a point thirty five blocks away in order to pay a personal bill, an accident occurring after he had proceeded about twenty blocks on such journey, the Court held that the relation of master and servant was suspended."

The affirmative charge, duly requested by the defendant in writing on this phase of the case, should have been given. In the refusal thereof there was reversible error. It results that the judgment of the circuit court should be and it is reversed and remanded.

Reversed and remanded.

BOULDIN, FOSTER, and LIVINGSTON, JJ., concur.

GARDNER, C. J., and BROWN, J., dissent in part.

KNIGHT, J., not sitting.

BROWN, Justice (dissenting in part).

I concur with Mr. Justice THOMAS in holding that the defendant was due the affirmative charge as to the issues presented by count 8 of the complaint, but am of opin-

ion that the evidence presented a jury question as to whether or not Holbrook, the driver of the truck, was acting within the line and scope of his employment at the time of the collision with plaintiff's automobile.

The evidence is without dispute that the defendants' truck was used by them as common carriers of freight; that the driver was the regularly employed driver of said truck and on regular duty; that said truck at the time was loaded with a thousand pounds of freight; that the route of the truck, as indicated by the permit, of necessity and convenience, was from Selma, Alabama, via Uniontown and to Greensboro and return. Nevertheless there was evidence showing that up to the time of the collision in question the defendants as carriers had been delivering freight to merchants in Sawyerville traveling the highway on which the truck was moving at the time of the collision. The evidence is also without dispute that Holbrook had carried the truck past Greensboro on the Akron and Sawyerville road to his father's home where he went to get eggs and buttermilk for his own use, a distance of two and one-half miles; or ten minutes' driving; that he had gotten the eggs and milk and was on his return to Selma, when the collision occurred in the "edge of Greensboro" near the old Hobson home.

Holbrook, the driver, testified: "I left my father's house and was going to Greensboro, pick up my helper and then going on to Selma. The accident occurred on the edge of Greensboro. I left Greensboro about six and stopped at my brother's filling station a few minutes, where I left my helper and I was to pick him up after I returned from my father's house and then go on to Selma. I had some freight on my truck for Mr. Huggins in Uniontown and I was going to carry it with me because I couldn't deliver it, for his store was closed. I was going to take that freight back to Mr. Bell so that it could be delivered the next day."

There was also evidence going to show that at the time of the collision the truck was moving at the rate of from thirty-five to sixty miles per hour at night, holding the inside of the curve on the left of the highway. Plaintiff's automobile was smashed and he was seriously and permanently injured.

In Blackmon v. Starling, 222 Ala. 87, 130 So. 782, it was observed by Mr. Justice Thomas: "Our decisions are further agreed that, where there has been a deviation or departure from the master's business, and the scope of the agent's employment, where such personal purpose and benefit has been accomplished, and the agent is in the process of returning to the sphere of his employer's business, the question as to whether he is acting within the line and scope of his employment and his master's business is for the jury under appropriate instructions from the court." Citing Edwards v. Earnest, 206 Ala. 1, 89 So. 729, 22 A.L.R. 1387; Id., 208 Ala. 539, 94 So. 598; Rooks v. Swift & Co., 210 Ala. 364, 98 So. 16; St. Louis-San Francisco Ry. Co. v. Robbins, 219 Ala. 627, 123 So. 12; Anderson v. Southern Cotton Oil Co., 73 Fla. 432, 74 So. 975, L.R.A.1917E, 715; 22 A.L.R. 1410, Note.

This doctrine and its application was approved in Mobile Pure Milk Co. v. Coleman, 230 Ala. 432, 161 So. 829; and authorities cited as supporting it show that it is in line with the great weight of authority.

GARDNER, C. J., concurs in the foregoing.