66 So.2d 602

## KING, Inc. v. THOMAS.

### I Div. 642.

Court of Appeals of Alabama.

June 30, 1953.

Wm. C. Taylor, Mobile, for appellant.

246

Alex T. Howard, Jr., Mobile, for appellee.

PRICE, Judge.

This is an action by the appellee against appellant for damages for personal injuries resulting to plaintiff from a fall on a sidewalk near defendant's theater in the City of Mobile.

The case was tried on count 2 of the complaint and defendant's pleas of the general issue and contributory negligence. There was a verdict and judgment for plaintiff for $325.

By 22 grounds of demurrer defendant questioned the sufficiency of count 2, and the overruling of the demurrer constitutes the basis of the first assignment of error. The count avers:

"The plaintiff claims of the defendant $1,500.00 as damages for this, that heretofore, on, to-wit the 2nd day of February, 1951, the defendant was engaged in the operation of a theatre, known as the Lincoln Theatre at the Northwest corner or intersection of Davis Avenue and Fisher's Alley, both public streets of the City and County of Mobile, State of Alabama, there was a public sidewalk in front of said Theatre on Davis Avenue, on the side and at the corner thereof, which sidewalk was paved with cement and was much used and traveled by the public, the weather on said day was so cold that water out of doors would quickly freeze and if water should be placed or poured on or over said sidewalk the same would quickly freeze and cause said sidewalk to be slick and slippery and a person using said sidewalk or passing over the same would be likely to slip and to fall thereon, notwithstanding all of which, a servant or agent of the defendant, whilst acting in the line and scope of his employment, negligently cast or spread water over the same with a hose, said water quickly froze and formed a coating of ice over the surface of said sidewalk and whilst said sidewalk was so covered with ice, the plaintiff, on her way to town, attempted to walk on said sidewalk and to pass over the same, but as a direct and proximate result of said ice on said sidewalk, the plaintiff slipped and fell thereon and as a direct result of said fall, plaintiff was badly bruised, wounded and injured as follows: Her left arm was fractured at or near the elbow, she has been treated by a physician and has incurred other medical expenses, she has been unable to pursue her occupation as a seamstress for a long time, she has endured great pain and suffering, and she has been deprived of the full use of her left arm for a long period of time. And plaintiff alleges that she suffered such injury and damages as a proximate result of the negligence of said servant or agent of the defendant in so covering said sidewalk with water as aforesaid."

One of appellant's contentions is that it does not appear from these averments that defendant owed any duty to plaintiff at the time and place.

█ It is a familiar rule of common law pleading that to state a cause of action for negligence the averments of the complaint must show that the defendant owed the plaintiff a duty to do or not to do the act complained of as the proximate cause of the injury.

"Under this rule it is sufficient if facts are alleged from which the law implies a duty of care toward the plaintiff. Such case appears where the wrongful or neg-

ligent act charged shows a breach of duty toward any and all persons that may be injured thereby." American Ry. Express Co. v. Reid, 216 Ala. 479, 113 So. 507, 508, and numerous authorities there cited.

■ The averment that defendant's servant or agent, while acting in the line and scope of his employment, negligently spread water over a public sidewalk in freezing weather and that the water froze and formed a coating of ice over the surface of the sidewalk is sufficient to show a breach of duty, implied by law, not to endanger persons in a position to be injured by such act.

■ Another contention is that it is not alleged with sufficient certainty the place where the accident occurred.

The averment as to the place of the accident is sufficient to give reasonable notice to defendant so as to enable him to investigate the accident and prepare his defense. Moreover, the undisputed proof shows that defendant's agents or employees saw the defendant fall. Bugg v. Green, 215 Ala. 343, 110 So. 718; Bennett v. Bennett, 224 Ala. 335, 140 So. 378; Tyson v. Winter, 225 Ala. 437, 143 So. 460.

Plaintiff testified that at approximately 7:00 A.M. on February 2, 1951, she was en route from her home to the post office in the City of Mobile, and was walking south on the paved sidewalk on the west side of Fisher's Alley next to the Lincoln Theater. There was no ice on the Fisher's Alley sidewalk, but when she reached the northwest corner of Fisher's Alley and Davis Avenue, at a point three or four feet from the curb, on the Davis Avenue side, she slipped on ice and fell. She went to a hospital for an X-ray, and returned to the theater that afternoon and Mr. King took her to Dr. Hannon. Before her fall she was averaging $15 a week as a seamstress.

On cross-examination she stated it was her intention to cross Davis Avenue and she did not turn to walk in front of the theater, which faces Davis Avenue. Before she fell she couldn't see around in front of the theater and saw no ropes or guides. The weather was very cold, but she saw no ice along the sidewalk generally. She was walking in her usual and customary manner and was looking where she was going. She doesn't look down at her feet when she is walking and didn't hold her head high. On being recalled to the stand later, she testified she had lived in that neighborhood a long time. Davis Avenue and Fisher's Alley are both public streets of the City of Mobile and there are plenty of people crossing and passing. She stated on recross-examination she didn't know the width of Fisher's Alley, but two automobiles can pass in that street.

Dr. Hannon testified plaintiff suffered a single chip fracture of the head of the radius, which is a break in the bone at the elbow. He treated her at intervals through April 4, 1951. She suffered pain for at least three weeks and was prevented from following her occupation as a seamstress for eight to ten weeks. His bill for his services was $42.

Albert Cole testified he was working for defendant at the Lincoln Theater on February 2nd. His duties were to clean the auditorium, wash the sidewalk, mop the lobby, etc. He washed the sidewalk that morning with a hose. He noticed the water freezing when he squirted it on the sidewalk. He first put ropes around the front of the building from the cashier's cage to the corner of the theater, and washed from the west end back toward the east. The water flowed out under the ropes in front of the building and he thinks it did on the corner.

On cross-examination this witness testified he is not working for defendant now. The ropes ran from an iron bar fixed to the cashier's office to a sign board at the east corner of the building. The rope left room for people to walk. He washed only the part that was roped off, starting at the west side he backed up toward Fisher's Alley spraying the sidewalk with the hose turned away from Fisher's Alley. When he reached the rope at the corner of the building he stopped. At no time was his hose turned on the Fisher's Alley side, nor any other point except back westward from

the corner of the building. It had not rained that morning but rained the previous morning and there was ice on the Fisher's Alley side and at the corner connecting Fisher's Alley with Davis Avenue from cars splashing water. He saw plaintiff when she fell at the corner of the building and Fisher's Alley. She was not far from the ropes but was outside them. He had not washed at the place where she fell, but there was water which had splashed up on the sidewalk and there was ice pretty well around the streets and sidewalks in that section. He testified on direct examination the sidewalk in front of the Lincoln Theater slanted a little towards the street so the water could run off.

Wm. L. Tilson, a Meteorologist with the U. S. Government in charge of the Mobile Weather Bureau, testified the temperature on February 2nd was 17 degrees at 6 A.M.; 15 at 7 A.M. and 15 at 8 A.M. The weather had gone below freezing between 7:00 and 8:00 o'clock on the morning of February 1st and remained below freezing into February 3rd. From midnight until 7:40 of the morning of February 1st there was a total of half an inch of rainfall and about 8:20 that morning there was an occasional snowflake, but there had been no rain on February 2nd up until 7:00 A.M. The meter recorded only the Federal building and didn't record what happened on Davis Avenue or the south part of town.

Clementine Mack testified he and Clarence Clark were standing on the corner of the intersection of Davis Avenue and Fisher's Alley at McEvoy's tavern across from the theater. He saw the porter washing the sidewalk in front of the theater with a hose. There was a rope across the doors, but it didn't extend as far as the path where plaintiff was walking. As witness and Clark came down the Avenue, just before they stopped at the corner, they had to go in the street to keep from getting water on them from the hose. This witness saw plaintiff walking down Fisher's Alley. She was walking in an ordinary manner at her normal speed. She fell right at the corner where Fisher's Alley sidewalk and Davis Avenue sidewalk meet.

Witness and Clark went over and picked her up. At the place where she fell there was clean ice and there was ice over the whole area where the water was running.

He testified on cross-examination that plaintiff was not a friend of his, but he had known her for quite awhile. She fell about a half yard or yard from the corner of the building on the Davis Avenue side. The ropes didn't come out to the corner of the building. The porter was squirting water up against the Lincoln Theater building and was washing the whole sidewalk and the building. He also squirted it on the corner of the intersection of the two sidewalks.

Clarence Clark testified to practically the same state of facts as testified to by the witness Mack.

Annie Bennett testified she was standing on the southwest corner of Davis Avenue and Fisher's Alley waiting for a bus. She saw a boy washing the sidewalk in front of the theater. He had wet, as far as she could see, from the corner back around to the front where he was. He left the hose running and was standing in the door of the theater when plaintiff fell. At the spot where she fell, right at the corner there, there was lazy ice, real slippery ice, covering the corner of the sidewalk. She saw no ice on the Fisher's Alley side.

She testified on cross-examination she was not related to plaintiff but had known her since she was a child. She fell just as she entered the corner of Davis Avenue and Fisher's Alley. She stated she didn't say on direct examination that she saw somebody washing the sidewalk. The boy had the hose laying there and the water was coming. She had seen him wash the sidewalk other mornings. She didn't see him washing it that morning. She didn't say awhile ago that the water ran from his hose clear across over there when he was washing the sidewalk. She went over there after plaintiff fell and the whole place was frozen up there. She didn't go to Fisher's Alley and didn't see any water there. There wasn't any ice over there where she was standing. It was freezing

cold and she saw ice that morning before she got there but it wasn't slippery everywhere she saw, and it wasn't slippery on the sidewalk she came down.

For the defendant William Hall testified he was working at the Lincoln Theater when the accident occurred. He is still working for defendant but works at the Ace Theater now. He and Albert Cole had roped off a space of about four feet in front of the theater, on the Davis Avenue side. Cole was working with him and had the hose. To his knowledge no part of the place where plaintiff fell was washed off and no water ever got there. He had walked inside the theater when she fell. The other boy told him about it, but when he got out there she had gotten up and was standing on the sidewalk. It had rained some that night and was very cold. The sidewalks all around there were icy or slippery. He came to work at six and scraped up the ice and put it in the garbage can. He had also been shoveling ice out of the street right on the edge of the curbing. Fisher's Alley is a dirt street, full of holes. Water was standing in the street. The ice where she fell came from cars splashing this water up on the sidewalk. There was ice on the corner where plaintiff's witnesses Clark and Mack said they were standing. Fisher's Alley is so narrow that when cars go through water and mud is splashed on both sides of the sidewalk. It took an hour and a half that morning to move the ice out of the street abutting the sidewalk on the corner of Fisher's Alley and Davis Avenue. This was on the street, not the sidewalk. He stated on cross-examination he was scraping the ice that was on the edge of the sidewalk while Albert used the hose. He told Albert not to wash outside the rope and he didn't put any water out there. He washed inside the ropes, but not around the edges where the people had to walk. The hose had water pressure behind it, but they had a way to cut it down low. When he was on the inside of the rope with the hose he would fan it right back, backing up, and when they got to the rope they would stop it and there would be no water outside the rope behind them. The sidewalk was paved on the Fisher's Alley side. Water would stand on the paved sidewalk a couple of days. They would dry the water up with a mop. They dried it up as best they could that morning, after they scraped the ice up. Plaintiff was about middle way from the tip end of the corner, coming down Fisher's Alley.

He testified on redirect examination he was talking about water in the roadway staying there two or three days before it dried up. He knew it had rained the night before. He saw Cole when he was cleaning the sidewalk and they put no water where plaintiff fell. On recross-examination he said there was ice there before she came along and only that little end had ice and there wasn't but a little there because he had scraped up the biggest part of it. On redirect examination he said he had just scraped "all the way around the building, all the way around there; from here, from right here clean back around to the front," and had just gotten through and was taking it inside when she fell.

Charlie King, Jr., Assistant to the General Manager of King Theatres, testified that he arrived at the Lincoln Theatre around 7:30 on the morning of February 2nd and was told that a woman had fallen on the sidewalk. He examined the sidewalk all the way back to the rear of the theatre. There was ice all down the Fisher's Alley side. The sidewalk had been roped off from the corner and the ropes were still there. He didn't notice any new water from the corner of the theater directly out to the curb on Davis Avenue and from this particular point out to the curb on Fisher's Alley. Most of the water he saw looked like it was mud frozen over. Fisher's Alley is a dirt street and there were great pools of water standing in Fisher's Alley along that point there. It was very cold that morning, and there was ice on all the sidewalks around there.

He testified on cross-examination that the sidewalk there is fairly level. He was asked whether the sidewalk slopes toward either of the streets and answered "Yes, it does" and stated that he told the boys it never should have happened, that they

shouldn't have squirted water on the sidewalk on a cold day.

■■ We have given careful consideration to all the evidence in the case and are of the opinion that the refusal of the affirmative charge was without error, under the well-recognized rule that where the evidence is conflicting or where conflicting inferences may reasonably be drawn therefrom, a jury question is presented. 18 Ala.Dig. Trial, ⚖142–143; William E. Harden Inc., v. Harden, 29 Ala.App. 411, 197 So. 94; Case v. O'-Shields, 30 Ala.App. 254, 4 So.2d 202; Birmingham Electric Co. v. Bailey, 31 Ala. App. 275, 15 So.2d 465, certiorari denied 244 Ala. 671, 15 So.2d 469.

■■ It is contended further that defendant was due the general affirmative charge because even if the evidence is regarded as having a tendency to prove that plaintiff's injuries were caused by her fall upon a slippery sidewalk, made so by defendant's agents or servants spreading water thereon in freezing weather, there is a lack of evidence tending to prove that such agents or servants were acting within the line and scope of their authority in washing any part of the sidewalk except at a point on Davis Avenue immediately in front of the theatre, there being no entrance to the building on the Fisher's Alley side. Such contention is without merit. An employer is responsible for the acts of his agents or servants done in the furtherance of their employment though the work is done by improper or unlawful means or in a way not authorized by the employer, unknown to him, or contrary to his express direction. Hardeman v. Williams, 169 Ala. 50, 53 So. 794; Lerner Shops of Alabama v. Riddle, 231 Ala. 270, 164 So. 385; Koonce v. Craft, 234 Ala. 278, 174 So. 478.

■■ Under this same principle of law the following charge was properly refused to defendant:

"The court charges the jury that if you are reasonably satisfied from the evidence that plaintiff fell and received her alleged injury at a point not in front of defendant's place of business, then you cannot find for plaintiff."

If the plaintiff's fall was the result of the negligent acts of defendant's servants or agents, while acting in the line and scope of their employment, it would be immaterial whether she fell in front of the theater or at some other place on the sidewalk.

■■ The next assignment of error insisted upon was the court's refusal to give the following requested charge:

"The court charges the jury that the words, 'proximate cause' as used here, means 'next' or 'nearest cause,' now with this explanation and definition of the words 'proximate cause,' I charge you that unless you are reasonably satisfied from the evidence that plaintiff's injuries was the direct and proximate cause of defendant's negligence, then you cannot return a verdict against defendant under the law."

■■ This charge is misleading. It correctly defines the word "proximate," but fails to state the meaning of proximate cause in the law of negligence. "By proximate cause is not meant necessarily the last act of cause, or nearest act to the injury, but such act, wanting in ordinary care, as actively aided in producing the injury as a direct and existing cause." 38 Am.Jur., Negligence, Sec. 55, p. 703.

■■ It is also misleading and confusing in stating that unless the jury is "reasonably satisfied from the evidence that plaintiff's injuries were the direct and proximate cause of defendant's negligence," they cannot return a verdict against defendant. Of course, plaintiff's injuries must be the "result of" or "caused by" defendant's negligence, but not the "cause of" his negligence.

The judgment of the trial court is affirmed.

Affirmed.