Mary Jo WHITTLE, as Administratrix of the Estate of Peggy Diana Whittle, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

Shirley H. DAVIS, as Administratrix of the Estate of Don M. Davis, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. Nos. 1113-S, 1114-S.

United States District Court, M. D. Alabama, S. D.

July 21, 1971.

Francis H. Hare, Jr., Hare, Wynn, Newell & Newton, Birmingham, Ala., for plaintiffs.

Gerard R. Lear, Dept. of Justice, Washington, D. C., Ira DeMent, U. S. Atty., Kenneth E. Vines, Asst. U. S. Atty., Montgomery, Ala., for defendant.

MEMORANDUM OPINION

VARNER, District Judge.

Plaintiffs sue the government for wrongful deaths of their respective intestates who were killed in a helicopter crash. Plaintiffs' intestates were passengers on a military aircraft piloted by one Goss, an Army Reserve pilot who had no authority to take aboard civilian passengers, at the time of the accident resulting in the death of all three. A log entry was introduced in evidence by Plaintiffs indicating that Goss had rented a helicopter and that the rentals had been charged to the United States for reserve pilot training. Goss was a reserve pilot with authority to rent such an aircraft for six hours during the month in question "to sustain his rotor wing proficiency". The plane was available to rentals both to the government and to private individuals, and Goss was qualified to rent the plane either as a reserve pilot or as a private individual. There was no evidence regarding the source of the abbreviation "charge reserve" appearing on the log as "c reserve", though it may be inferred that this was done either on the authority of Goss himself, or by implication by the lady who entered the log entry based on the fact that Goss had authority to so charge the rentals for the flight because he did have orders authorizing him to rent an aircraft for sustaining his proficiency in rotor-wing flight.

As evidence that Goss was not acting within the scope of his authority, the government introduced evidence that, immediately prior to and during the flight in question, Goss dressed as a civilian while customarily such pilots wore traditional flight uniform; that, in violation of regulations, Goss filed no flight plan and, apparently, got no weather briefing; that he took on unauthorized passengers in violation of regulations; and that he did not fly at the required altitude.

Evidence indicated, and the parties seemed to agree, that the accident was caused by the pilot's having flown at prohibited altitudes, striking an electrical wire at an altitude of between 36 and 50 feet and resulting in the crash fatal to all three occupants. The evidence showed that the aircraft had departed from Napier Airfield at Dothan, Alabama, without a flight plan, proceeded directly to the airport at Headland, Alabama, some ten miles distance, landed at Headland where two passengers, the Plaintiffs' intestates, boarded and immediately departed from Headland for an unknown destination, still without flight plan; that some three or four miles from the Headland airport, witnesses saw the aircraft in question at altitudes varying between 100 and 36 feet, that one of the witnesses noticed the aircraft for about a mile prior to the crash and noticed that the plane was rocking in an unusual manner for some distance before it crashed. There was evidence tending to show that the government investigators found that the accident was caused by pilot error and that the government had paid the Alabama Power Company for damages to the wire struck by the plane.

The Plaintiffs argued that the pilot attempted to fly under the wires and the accident was caused by his last-minute change of plans in attempting to clear them. There was evidence from which the Court might infer that the pilot struck the wires because he failed to see them.

CONTROLLING LAW.

Under the Federal Tort Claims Act, the courts are in accord and the parties seem to agree that questions of agency and questions of what acts may be considered wanton, depend upon state law. 28 U.S.C.A. § 2674; Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761; Underwood v. United States, 356 F.2d 92 (5th Cir., 1966); Mider v. United States, 6th Cir., 322 F.2d 193.

The fact that an agent is combining personal pleasure with his employer's business does not necessarily mean that he is acting outside of the scope of his authority as agent so as to release his employer of liability. Nelson v. Johnson, 264 Ala. 422, 88 So.2d 358 (1956). A servant or agent may be within the scope of his authority though he is doing his work by improper or unlawful means or in a way not authorized by the employer or even contrary to the employer's expressed directions. Hardeman v. Williams, 169 Ala. 50, 53 So. 794 (1910); Lerner Shops of Alabama v. Riddle, 231 Ala. 270, 164 So. 385 (1936); Luquire Ins. Co. v. McCalla, 244 Ala. 479, 13 So.2d 865 (1943); United States Steel Co. v. Butler, 260 Ala. 190, 69 So.2d 685; King, Inc. v. Thomas, 37 Ala.App. 244, 66 So.2d 602. A master, under Alabama law, is responsible for his servant's acts within the scope of his authority, even though the acts were done willfully or maliciously, City Delivery Co. v. Henry, 139 Ala. 161, 34 So. 389, and even though the servant's acts may constitute homicide, Mt. Vernon-Woodberry Mills v. Little, 222 Ala. 605, 133 So. 710. Alabama has not adopted the rule, Restatement of Agency § 242, exempting from liability of the master any responsibility for acts done to unauthorized passengers. Hottovy v. United States, D.C., 250 F.Supp. 315.

In Alabama the legal effect of an agent's giving an invitation to ride to a third party in violation of the rule of his principal is that, as to the master, the invitee of the agent is no more than a trespasser and, as such, is legally entitled not to be willfully or wantonly injured by the master or the agent of the master acting in the scope of his authority. Jewel Tea Co. v. Sklivis, 231 Ala. 590, 165 So. 824; Perry Supply Co. v. Brown, 221 Ala. 290, 128 So. 227; Harper v. Griffin Lumber Co., 250 Ala. 339, 34 So.2d 148. Inherent in wanton negligence is the idea of moral fault arising from the doing or failing to do an act with consciousness that the act or omission would probably cause serious injury and with reckless indifference to consequences. Alabama Great So. R. Co. v. Louisville & Nashville R. Co., 5th Cir., 224 F.2d 1, 50 A.L.R.2d 1302.

Obviously, the burden of proof in these cases is on the Plaintiffs to establish wanton misconduct on the part of the government's agent, acting in the line and scope of his authority as such.

An act of an agent, to be performed within the scope of his authority must be performed in the promotion of business of his employment, and it must not be the result of, or be impelled by, wholly personal motives if the master is to be liable for the act of the servant. Palos Coal & Coke Co. v. Benson, 145 Ala. 664, 39 So. 727; Birmingham News Co. v. Browne, 228 Ala. 395, 153 So. 773; Koonce v. Craft, 234 Ala. 278, 174 So. 478; Railway Express Agency v. Burns, 255 Ala. 557, 52 So.2d 177; Jessup v. Shaddix, 275 Ala. 281, 154 So.2d 39. It should be noted that liability for injuries caused by the wanton conduct of a servant must be determined by the duty fixed by law and is independent of any private rule or regulation established by the master for control of the servant, Harrison v. Mobile Light and Railroad Co., 233 Ala. 393, 171 So. 742; but it must ever be borne in mind that the question of whether or not the employee's wrongful act occurs within the scope of his employment must be determined in light of the surrounding circumstances, St. Louis-San Francisco Ry. Co. v. Robbins, 219 Ala. 627, 123 So. 12; and the determination of this fact must be upon consideration of all of the particular facts of the case, Bell v. Martin, 241 Ala. 182, 1 So.2d 906; Birmingham Electric Co. v. Hawkins, 37 Ala.App. 282, 67 So.2d 56.

### FINDINGS AND OPINION

The Plaintiffs relied upon compliance by pilot Goss with some Army regulations, customs and orders requiring Goss to fly six hours, "to sustain his rotor-wing profiency", in order to show that he was within the scope of his employment as a government agent. They

ignore violations of the regulations providing what is required in solo flight to sustain this proficiency as those violations may bear on whether violation thereof may tend to show abandonment of authority. In the opinion of the Court, the Plaintiffs seek to have their cake and eat it, too. While Goss' actions in violation of the regulations mentioned in the second paragraph hereof are not individually controlling, Jewel Tea Co. v. Sklivis, supra, Perry Supply Co. v. Brown, supra, his utter abandonment of regulations, coupled with the fact that every single thing that he did, other than to take off from the airport at Dothan, was independent of the purpose of practicing landings and approaches (as ordered for the purpose "to sustain his rotor-wing profiency") and was directly associated with his obvious purposes of taking his civilian friends for a joy ride, may be considered for whatever bearing they may have on whether or not Goss was acting in the scope of his authority. From this evidence, the Court may infer that Goss departed so far from the lines of his duties that he exceeded or departed completely from his authority, or that he rented the plane as a civilian, not as a military pilot, and never intended to thereby perform services in the scope of his duties. To support their burden of proof, Plaintiffs showed that the person logging the aircraft out to Goss made an entry, "c reserve", indicating that the charge was to be made to the government for reserve time for its pilot. While this bare record is some support in the evidence to show a lease to the government for military use, there was no evidence as to who furnished the information for that entry. It may have been a statement by the agent himself or an assumption by the person making the entry. Goss was authorized to rent the plane for the military reserve unit. While this log entry may have created an inference in favor of Goss' military status, its weight is highly questionable.

It is this Court's opinion that Goss' actions after having logged the plane out and while doing so, in ignoring all apparently pertinent military regulations and in failing to practice steep and shallow approaches to landings as required to sustain his proficiency, tended to show that he acted as a civilian, rather than as a military pilot. There was evidence that Goss dressed as a civilian, he filed no flight plan, and apparently received no weather briefing as required by the regulations, he did not practice any local landings or approaches as required to maintain flight proficiency, but flew directly to Headland, where he was intent on his own frolic with his personal friends, the Plaintiffs' intestates in this case, and having taken on his illicit cargo, proceeded to fly at extremely low altitudes across country rocking the aircraft to the apparent delight of all until he reached the point of his disaster. From this evidence, the Court may infer that Goss had abandoned the business of his master. See, e. g., King v. United States, 5th Cir., 178 F.2d 320, cert. den., 339 U.S. 964, 70 S.Ct. 998, 94 L.Ed. 1373; United States v. Taylor, 6th Cir., 236 F.2d 649, 74 A. L.R.2d 860, motion to remand den., 353 U.S. 956, 77 S.Ct. 862, 1 L.Ed.2d 970, cert. dismd., 355 U.S. 801, 78 S.Ct. 6, 2 L.Ed.2d 19; Langston v. United States, Civil Action No. 4830, U.S.D.C.M.D. Tenn., May 12, 1971.

Plaintiffs substantially concede, and correctly we think, that Plaintiffs' intestates were trespassers and that the government's liability was not wantonly to injure the Plaintiffs' intestates by and through its agent's acts done in the scope of his authority. Plaintiffs failed to meet the burden of proving that the misconduct was in the line and scope of authority of the government's agent, and, therefore, no claim of liability has been sustained against the government. 28 U.S.C.A. § 1346(b); King v. United States, 178 F. 2d 320, cert. den., 339 U.S. 964, 70 S.Ct. 998, 94 L.Ed. 1373; Harris v. Boreham, 3rd Cir., 233 F.2d 110; Friedman v. United States, D.C., 139 F.Supp. 600. This Court is also not reasonably satis-

fied from the evidence and finds that there is no preponderance of the evidence showing wanton misconduct on the part of the Defendant's agent. Wanton misconduct involves an act which would probably cause serious injury. Alabama Great So. R. Co. v. Louisville & Nashville R. Co., 224 F.2d 1, 50 A.L.R.2d 1302. Low level flying is well known to be an integral part of the duties of a military pilot, especially in combat by rotor-wing aircraft. This fact is so well known as to be within the judicial knowledge of this Court. This flying is dangerous because it is done in proximity to obstructions, such as trees and power lines, and even in proximity to the ground itself. However, no proof has been offered from which this Court is reasonably satisfied that serious injury would probably result from erratic flight or evasive action on the occasion in question.

It is, therefore, the order of this Court that the Plaintiffs take nothing in these causes and judgments are hereby entered for the Defendant in both cases.