Dennis George **OATES** and James H.
Binger, Plaintiffs,

v.

The **UNITED STATES** of America,
Defendant.

Civ. A. No. 1205–S.

United States District Court,
M. D. Alabama, S. D.

Sept. 27, 1972.

Richard C. Belser, Hill, Robison, Belser, Brewer & Phelps, Montgomery, Ala., and J. Kenneth Jensen, La Jolla, Cal., for plaintiffs.

Ira DeMent, U. S. Atty., and Kenneth E. Vines, Asst. U. S. Atty., M. D. Alabama, Montgomery, Ala., for the United States.

ORDER

JOHNSON, Chief Judge.

This is an action brought under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), 267 et seq., seeking damages for the destruction of a helicopter. The case is now submitted upon cross-motions for summary judgment, each made pursuant to Rule 56, Federal Rules of Civil Procedure, and a written stipulation of facts upon which said motions for summary judgment are based.

Plaintiff Binger was the owner of a Bell Helicopter, Model 47G–2A1, No. 73980, which he leased to plaintiff Oates. Plaintiff Oates, in turn, leased

842

the helicopter to Napier Air Service; Napier, in turn, entered into a contract with the United States Army whereby Napier agreed to furnish certain approved aircraft for use by Army Reserve Aviators in the Dothan, Alabama, area. W. J. Goss was a member of the Army Reserve and was on March 31, 1969, issued orders to obtain six hours of reserve duty training between April 1 and June 10, 1969, at Government expense, in aircraft belonging to Napier Air Service. The purpose of this six hours of flying time was "to sustain rotor wing proficiency." Pursuant to these orders, Goss logged four helicopter flight hours during the month of May, 1969. On June 7, 1969, Goss arrived at Napier Air Service and, based upon his orders, was permitted to check out the helicopter owned by the plaintiffs.[1] Goss departed Napier Field dressed in civilian clothes, without having filed a flight plan or having obtained a weather briefing—all of which was contrary to his military orders and regulations.[2] On this point the evidence reflects that Napier Air Service had no authority to refuse permission to any Army reservist who had appropriate orders, such as Goss had, even though the Army reservist appeared for duty in civilian clothes, did not have a flight plan and did not have weather information. Upon obtaining the helicopter, Goss flew directly to Headland Air Field where he landed the aircraft and allowed a Miss Whittle and a Mr. Davis to board the aircraft. Shortly after departing Headland airport, the aircraft struck power lines, causing the aircraft to crash and killing all three persons aboard. At the time of the crash, the helicopter had a fair market value of $24,800.

It is stipulated that Goss violated Army regulations which prohibited unauthorized passengers and which required reservists to pilot aircraft in

flight uniform, file a flight plan, obtain a weather briefing, and fly at required minimum altitudes. It is further stipulated that the Department of the Army paid Alabama Power Company for damages to the wires struck by the aircraft, and paid for the June 7, 1969 rental of the aircraft by Goss.

■ Civil actions by the legal representatives of Davis and Whittle, filed pursuant to the Federal Tort Claims Act, resulted in judgments in favor of the United States. Whittle v. United States, 328 F.Supp. 1361. However, the parties stipulate that they are not bound in this case by the findings, conclusions or judgment that was made in *Whittle*. The Government insists that the finding of the Court in the *Whittle* case that

" . . . Goss departed so far from the lines of his duties that he exceeded or departed completely from his authority, or that he rented the plane as a civilian, not as a military pilot, and never intended to thereby perform services in the scope of his duties"

is nevertheless conclusive of that issue in this case, especially since the plaintiffs have agreed that they are unable to present any evidence in addition to that which was presented to the Court in the *Whittle* case.

This Court is of the opinion that the decision in the *Whittle* case is of no precedential value in this case. It appears that in *Whittle* the Court indicated that there was sufficient evidence to infer that Goss was either acting as a civilian, and thus not within the scope of his authority as an agent of the Government, or that he had departed so far from his authority that he was no longer acting as an agent of the Government. It is evident, however, that the Court in *Whittle* based its judgment upon the legal effect of an agent's offer of a ride

---

1. This helicopter was available for use and was principally used by Army Reserve pilots such as Goss, but it was also available to members of the general public who were qualified to pilot same.

2. The evidence reflects that Goss had never requested the use of this helicopter for personal services.

to third parties in violation of the rule of his principal. The Court in *Whittle* concluded that the passengers were no more than trespassers and, as such, were only legally entitled not to be willfully or wantonly injured by the master or the agent acting in the scope of his authority. This construction of *Whittle* is borne out by the fact that the Court, subsequent to finding that Goss was not acting within the scope of his authority, stated further that there was insufficient evidence "showing wanton misconduct on the part of Defendant's agent." 328 F.Supp. at 1365. Thus, the *Whittle* Court's finding as to the capacity in which Goss flew would not appear to be relevant if the Court's statement as to the legal effect of Goss's invitation, in violation of the rule of the United States Army, to the unauthorized passengers and the Court's finding of a lack of wantonness are determined to be controlling.

■■ Given the clarity of Alabama law on wantonness and the weakness of the evidence giving rise to the inferences that Goss acted as a civilian, or that he departed entirely from his master's business, it appears that the *Whittle* decision merely holds that the two unauthorized passengers were only entitled not to be willfully or wantonly injured by the master or the agent. This suggests the fundamental distinction between *Whittle* and the present case. In *Whittle* the issue was with respect to the duty owed by the United States to mere trespassers who were invited by its agent, contrary to the rules of the United States. In the present case, the issue is with respect to the duty owed by the United States to a party with whose agent the United States entered into a contract and, through its own agent, into a bailor-bailee relationship. Reliance by the Government on the principles outlined in Bell v. Martin, 241 Ala. 182, 1 So.2d 906 (1941), is misplaced. Bell v. Martin was a classic "milk route" type case, where the basic question involved was the duty owed an injured third party, and where the abandonment of the master's business was clearly established. This Court is impressed that the case *sub judice* is controlled by the principles laid down by the Supreme Court of Alabama in Southern Garage Co. v. Brown, 187 Ala. 484, 65 So. 400 (1914). Here, as in *Southern Garage,* possession of the property, the value of which is sought after destruction by the agent, was obtained by the agent solely by virtue of his employment. In the case now before this Court, Goss obtained possession of the helicopter solely by authority of the orders issued by the United States. He was acting, in obtaining possession of the helicopter, upon his master's express command. The possession of the helicopter by Goss was possession of the helicopter by the United States, and the United States must be answerable for Goss's negligence in the matter of destroying the helicopter even though there was obviously some deviation by Goss from his master's business. This is true notwithstanding Goss's deviation from his orders and his authority. Such a conclusion must be reached where one of two innocent parties must suffer a loss arising from the misconduct of a third party. In such instances the loss must fall upon the party that is responsible for placing the helicopter in the hands of the agent who destroyed same. The loss should fall on the party who could most easily have prevented the happening or a recurrence of the happening. Under such circumstances, it has been stated that the loss should not ·

"  .   .   . fall on one who could not have guarded beforehand against the accident and who could not prevent its recurrence, except by refusing to let the property in the future, which would be a public disadvantage, tending to throw needless impediment in the way of business; whereas, if the loss were to fall on the hirer, it would fall on one who would thereby be led to greater care in the selection of his servants, who could punish the latter for his misconduct by dismissing him,

and who, theoretically at least, had a right of action against the servant."
52 ALR 711 at page 713, commenting upon Coupe Co. v. Maddick, 2 Q.B. 413 (1891).

In view of the foregoing findings and conclusions, this Court does not believe that any extended discussion of the theory of ratification is necessary. However, on the question of ratification of Goss's action on June 7, 1969, by the United States, through payment of the rental for the demolished aircraft and payment for damage to the power lines, see Singer Manufacturing Co., et al. v. Taylor, 150 Ala. 574, 43 So. 210; W. E. Belcher Lumber Co. v. York, 245 Ala. 286, 17 So.2d 281.

In accordance with the foregoing, it is the order, judgment and decree of this Court that the plaintiffs have and recover of the United States the sum of $24,800.

It is further ordered that the costs incurred in this proceeding be and they are hereby taxed against the United States.